AURORA FIREFIGHTER'S CREDIT UNION, Plaintiff-Appellee, v. C. J. HARVEY, Defendant-Appellant.

Second District    No. 2—86—0734

Opinion filed December 9, 1987.

Ronald A. Gullstrand, of Aurora, for appellant.

Gordon R. Hughes and Lloyd J. Tyler, both of Tyler & Hughes, of Aurora, for appellee.

JUSTICE HOPF delivered the opinion of the court:

Defendant, C. J. Harvey, appeals from a judgment entered against him following an unfavorable jury verdict in a collection action brought by plaintiff, Aurora Firefighter's Credit Union. He contends on appeal that the trial court erred in: (1) dismissing his State and Federal statutory affirmative defenses, (2) dismissing his pending counterclaim and denying leave to file a new counterclaim, (3) refusing the jury instructions tendered by him, and (4) allowing certain jury instructions tendered by plaintiff. We affirm in part and reverse in part.

On January 13, 1981, Delbert Dittman procured an official credit union loan application form from Donald Kramp, treasurer of the Aurora Firefighter's Credit Union (credit union). Dittman wanted to borrow $2,000 from the credit union to redeem the purchase of a lot which had been sold at a tax sale. He took the loan application to the defendant's residence. The defendant, in his own handwriting, completed the comaker's statement on the reverse side of the application. The parties agree that no typing appeared on the document at that

time. Subsequently, Dittman completed the application and dated it January 13, 1981.

On January 15, 1981, Dittman and defendant drove to the credit union office, which was located at the home of Donald and Audrey Kramp. Dittman went into the house and returned with Audrey Kramp. Mrs. Kramp carried a clipboard which held a promissory note. Defendant signed the note. He testified that, other than Delbert Dittman's signature, the note was then entirely blank and contained no typing. Defendant further testified that prior to signing the note, he asked Dittman: "You going to mess me up on this?" Dittman responded in the negative, and Mrs. Kramp added, "Don't worry about Del. He has been a firefighter for a long time." Dittman testified that defendant stated that signing a blank note was like buying "a pig in a poke."

Both Dittman and defendant testified that the note signed by the latter was for $2,000 and defendant became the guarantor for the Dittmans to borrow $2,000 for the stated purpose of paying the taxes on their lot. A $2,000 check was drawn on the credit union, payable to Delbert Dittman on January 15, 1981. The evidence showed that Dittman endorsed the check and used it to redeem the lot from the Kane County tax sale. The evidence also showed that the amount of the loan was charged to Dittman's account with the credit union and that Dittman made a wage assignment as security for the loan.

At the time that the $2,000 loan was advanced to Dittman, he had an existing loan of $7,080.13 from the credit union. The credit union added the $7,080.13 loan balance to the $2,000 note, cancelled the old note, which had a different guarantor, and created a new loan instrument in the amount of $9,080.13. The finance charges increased the amount owed to $12,960.60.

Audrey Kramp testified that she had never left her residence to have anyone sign a credit union note or other papers and that she never had a blank note signed by anyone. Donald Kramp testified he saw the completed application and note at least two days before the check was issued by the credit union. He also stated that the application and note had been predated to January 15, 1981, before being given to Dittman to complete.

Dittman testified that when he was told the preexisting loan would be added to the $2,000 he wished to borrow he wrote down that he was applying for a $10,000 loan. At no time did he reveal this fact to defendant. It is not contested that defendant did not receive a copy of the note. Defendant testified that he did not learn that he became a guarantor on the Dittmans' note in excess of $12,000 until he

was contacted by the credit union two years later. At that time Dittman's debt had been discharged in bankruptcy, and the credit union was seeking payment from him as guarantor of the note. Ultimately, the credit union filed this action to collect from Harvey.

All of the errors alleged by defendant in this court are based on essentially a single determination made by the lower court relative to Harvey's pleadings. In addition to his answer to plaintiff's complaint, Harvey filed affirmative defenses and a counterclaim based on State and Federal consumer protection legislation. The credit union moved to strike and/or dismiss these pleadings. The trial judge decided that, since the subject transaction involved a loan from a credit union, it was controlled solely by the Illinois Credit Union Act (Ill. Rev. Stat. 1985, ch. 17, par. 4401 *et seq.*, formerly codified at Ill. Rev. Stat. 1979, ch. 32, par. 1301 *et seq.*) and that the consumer protection statutes which formed the basis for defendant's affirmative defenses and counterclaim were inapplicable. In accord with this conclusion the trial court prohibited defendant from mentioning the consumer protection statutes to the jury. The effect of this prohibition was to leave defendant with no affirmative defenses and no counterclaim.

Defendant asks this court to hold, contrary to the trial court, that the State and Federal consumer protection legislation he relies on is applicable to a credit union loan process. We note that defendant cites to specific Federal statutes but fails to give dates for those citations. As pointed out by plaintiff, defendant has violated Supreme Court Rule 341(e)(5) (107 Ill. 2d R. 341(e)(5)) by also failing to provide us with the pertinent text of any of the statutory provisions he cites. Despite these omissions, however, we have reviewed the record and considered defendant's arguments. We conclude that the trial court properly found that certain of defendant's defenses and claims were inapplicable but erroneously rejected others.

Defendant seeks relief in Federal consumer protection statutes. Specifically, defendant cites sections 1601, 1604, 1606, 1671, and 1632 of the Truth in Lending Act (Truth in Lending) (15 U.S.C.A. §1601 *et seq.* (West 1982)) and section 226 of Federal Reserve Board Regulation Z (12 C.F.R. §226 *et seq.* (1987)). As previously noted defendant has provided no dates for his Federal citations. The citations given are our own. The statutory sections defendant relies on, with the exception of section 1671 which appears to have no relevance here, are concerned with disclosure of credit terms to the consumer. They set forth the need for such disclosure, provide for regulations to ensure disclosure, and specify the form of disclosure. Regulation Z was issued to implement the Truth in Lending Act. Defendant does not specify

which parts of the lengthy regulation he invokes. He does, however, insist that Truth in Lending is applicable to the loan involved here and that he should have been able both to present relevant provisions of the law in his defense and to pursue a counterclaim based on violations of Truth in Lending. The credit union does not dispute that Truth in Lending applies to credit union loans. Rather, the credit union contends that, pursuant to Regulation Z, it was not required to make the Truth in Lending disclosures to Harvey because he was not a principal debtor on the loan made to Dittman. In our opinion, the credit union is correct.

■■ According to section 1631(a) of the Truth in Lending Act: "[A] creditor *** shall disclose to the person who is obligated on a consumer *** credit transaction the information required under this subchapter. In a transaction involving more than one obligor, a creditor *** need not disclose to more than one of such obligors if the obligor given disclosure is a primary obligor." (15 U.S.C.A. §1631(a) (West 1982).) Section 1631(a) is echoed in Regulation Z, which states in pertinent part:

> "If a transaction involves more than one creditor, only one set of disclosures shall be given and the creditors shall agree among themselves which creditor must comply with the requirements that this regulation imposes on any or all of them. If there is more than one consumer, the disclosures may be made to any consumer who is primarily liable on the obligation." (12 C.F.R. §226.17(d) (1987).)

It is apparent that Truth in Lending requires disclosure only to the party primarily obligated in a credit transaction. Accordingly, the credit union was required to make the Truth in Lending disclosures to Harvey only if he were a primary obligor on the loan. Defendant insists that he signed the note and security agreement as a comaker and was, therefore, equally obligated with Dittman and equally entitled to disclosure. Our review of the record persuades us otherwise.

It is true that the loan application designated Harvey as a comaker and that Harvey placed his signature immediately after Dittman's on the line designated for the borrower on the note and security agreement. Nevertheless, occurrences both before and after the signing indicate that Delbert Dittman, and not C. J. Harvey, was the principal borrower and that Harvey signed for Dittman merely to help him secure the loan.

■■ It was Dittman who asked Harvey for help in getting the loan. Both Dittman and Harvey testified that Dittman needed the loan in order to buy back a piece of real estate. Dittman filled out the

face of the loan application. The check for the loan proceeds was made out only to Dittman and endorsed by him. Dittman signed the wage assignment made as security for the loan, and the amount of the loan was added to Dittman's account with the credit union. The record is devoid of evidence that Harvey benefitted from the loan in any way. These facts indicate to us that Harvey signed the promissory note not as an equal maker of the loan, but as a secondary obligor.

We perceive Harvey as analogous to an accommodation party as that phrase is used in the Uniform Commercial Code (UCC) (Ill. Rev. Stat. 1985, ch. 26, par. 3—415). Section 3—415 provides:

> "An accommodation party is one who signs the instrument in any capacity *for the purpose of lending his name to another party to it.*" (Emphasis added.)

The status of accommodation maker, rather than comaker, has been found to apply to a cosignor of a note (*Holcomb State Bank v. Adamson* (1982), 107 Ill. App. 3d 908, 438 N.E.2d 635), and a wife who signed a note as a maker (*Godfrey State Bank v. Mundy* (1980), 90 Ill. App. 3d 142, 412 N.E.2d 1131).

The intent of the parties is the significant factor in determining whether the party is an accommodation party, and, if no intent is expressed, the purpose or use of the instrument is a significant element. In addition, when a party receives no direct benefit from execution of a note, he will likely be considered an accommodation party. (*Holcomb State Bank*, 107 Ill. App. 3d at 911, 438 N.E.2d at 638; *Godfrey State Bank*, 90 Ill. App. 3d at 144, 412 N.E.2d at 1136.) The courts are also inclined to recognize a party as an accommodation party on a note when: (1) the party did not participate in negotiations for credit or subsequent modifications of credit arrangements, (2) the evidence shows that the creditor was aware the party was not the one seeking the credit, (3) the party is not the one to whom proceeds are credited, and (4) the party has no interest in the purpose for which the proceeds are used. *Holcomb State Bank*, 107 Ill. App. 3d 908, 438 N.E.2d 635; *Godfrey State Bank*, 90 Ill. App. 3d 142, 412 N.E.2d 1131.

Applying the principles defining accommodation party under the UCC to the case at bar, we find that both Dittman and Harvey, by their own testimony, intended that Dittman was to be primarily liable on the note and that Harvey was to be only a secondary debtor. Dittman sought the loan but needed Harvey's help to get it. Harvey stood to gain nothing from the transaction. There is no evidence that Harvey participated in any way in the credit arrangements. In fact, there was testimony that he was not a member of the credit union

and that the credit union could not make loans to nonmembers. Therefore, Harvey could not have participated in the loan arrangements. Moreover, the credit union should have been well aware the loan was for Dittman and not Harvey, since only Dittman was a member of the union. Finally, the proceeds of the loan were credited only to Dittman, only Dittman was charged with the debt, and Dittman made the wage assignment as security for the loan. We believe Harvey would fall into the classification of an accommodation maker and would not be liable as a comaker of Dittman's note. While the UCC definition of an accommodation party is not controlling here, we find it to be a highly persuasive analogy.

Since Harvey did not assume primary liability on the note for Dittman's loan, he was not entitled to disclosure under the Federal statute and regulations. Therefore, his attempt to base his affirmative defense and counterclaim on the Federal provisions was insufficient as a matter of law, and he was properly precluded from presenting those provisions to the jury.

■■ Defendant also seeks relief from the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1979, ch. 121½, par. 261 *et seq.*) and the Uniform Deceptive Trade Practices Act (Deceptive Practices Act) (Ill. Rev. Stat. 1979, ch. 121½, par. 311 *et seq.*). He alleges that plaintiff both made certain misrepresentations and failed to make certain disclosures in violation of the two Acts. The credit union responds that the Acts do not apply to it because its activities are within the scope of exceptions which are created by the Acts themselves.

The first exception invoked by plaintiff is found in section 10b of the Consumer Fraud Act, which states:

"Nothing in this Act shall apply to:

(1) Actions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." (Ill. Rev. Stat. 1979, ch. 121½, par. 270b.)

Similarly, in section 4 of the Deceptive Practices Act it is provided that:

"This Act does not apply to:

(1) conduct in compliance with the orders or rules of or a statute administered by a Federal, state or local governmental agency." (Ill. Rev. Stat. 1979, ch. 121½, par. 314(1).)

The credit union first contends that its alleged failure to disclose to Harvey was authorized by and in compliance with the Truth in Lending Act and thus was within the scope of the exceptions to both the

Consumer Fraud Act and the Deceptive Practices Act. We agree.

The question of the relationship between the Consumer Fraud Act and the Truth in Lending Act was addressed by our supreme court in *Lanier v. Associates Finance, Inc.* (1986), 114 Ill. 2d 1, 499 N.E.2d 440. In *Lanier* an installment loan agreement provided for prepayment of the outstanding loan balance. The Rule of 78's was named as the method which would be used to calculate a refund of the interest charges for any months prepaid. No explanation of the the Rule of 78's, or its effect on the amount of the refund, was given. Plaintiff borrower was credited with a significantly lower refund than she anticipated. She contended that the failure to explain the effect of the refund formula constituted inadequate disclosure in violation of the Illinois Consumer Fraud Act. The lender responded that it had complied with the Federal Truth in Lending Act and was, therefore, not liable under the Consumer Fraud Act.

The *Lanier* court first found that Truth in Lending addressed the use of the Rule of 78's. Regulation Z required identification of the method of calculating a refund of prepaid interest charges. A Federal Reserve Board interpretation of Regulation Z referred specifically to the Rule of 78's and indicated that reference to the rule by name only met the identification requirement. Explanation of the rule or its effect was not required. The court concluded that the lender had complied with the disclosure requirements of Truth in Lending and proceeded to determine whether such compliance was a defense to liability under the Consumer Fraud Act.

The court began its analysis with an examination of several Illinois consumer credit statutes similar to the Consumer Fraud Act. It was found that those statutes expressly provide that credit agreements that comply with the Truth in Lending Act and its attendant regulations are in compliance with the State statutes. It was also noted that the consumer credit statutes require specific disclosures in credit agreements while the Consumer Fraud Act, rather than mandating any specific disclosure, is a general prohibition of fraud and misrepresentation in consumer transactions. The court opined that since the consumer credit statutes, which require specific disclosures, are satisfied by compliance with the comprehensive provisions of Truth in Lending, the generalized prohibitions found in the Consumer Fraud Act did not require more extensive disclosure than Truth in Lending. The disclosure requirements of Illinois' consumer credit statutes were perceived by the court as revealing "a consistent policy against extending disclosure requirements under Illinois law beyond those mandated by the Truth in Lending Act, in situations where both

the Act and the Illinois statutes apply." *Lanier*, 114 Ill. 2d at 17, 499 N.E.2d at 447.

Although the Consumer Fraud Act, unlike the consumer credit statutes, did not specifically refer to Truth in Lending, *Lanier* nevertheless found Truth in Lending applicable to the case before it pursuant to section 10b(1) of the Consumer Fraud Act. According to the court, by virtue of section 10b(1), conduct authorized by such Federal statutes and regulations as those administered by the Federal Reserve Board is exempt from liability under the Consumer Fraud Act. The disclosure challenged in *Lanier* was found to be authorized by Regulation Z and thus by the Truth in Lending Act. The Truth in Lending Act was administered by the Federal Reserve Board. Thus, the defendant's conduct did not have to meet the arguably higher disclosure standards of the Consumer Fraud Act. Compliance with Truth in Lending was a defense to liability under the Consumer Fraud Act.

As we read its opinion, the *Lanier* court focused on the particular conduct challenged by plaintiff rather than the fact that what was involved generally was an installment loan transaction. The conduct complained of consisted of a specific failure to explain a significant term of the finance agreement. However, since the disclosure that was made was authorized by Truth in Lending, nothing more was necessary, not even under the Consumer Fraud Act. Applying these principles to the case at bar, we find that the credit union, like the defendant in *Lanier*, is not bound by the disclosure standards imposed by the Consumer Fraud Act. We add that, while plaintiff in *Lanier* did not assert the Deceptive Practices Act as did defendant here, we perceive no reason why the reasoning of *Lanier* should not also apply to the latter Act.

Unlike *Lanier*, which centered on the adequacy of the content of disclosure, this case raises a threshold question as to whether defendant was entitled to disclosure from the credit union. We have already found that both the Truth in Lending Act and Regulation Z specifically call for disclosure only to the principal obligor in situations where there is more than one obligor. As discussed earlier, Harvey was not the principal obligor. Accordingly, in our view the absence of disclosure to Harvey was within the disclosure authorization established by Truth in Lending and certainly did not constitute noncompliance with the Federal statute. On the contrary, Truth in Lending excluded Harvey from the scope of required disclosure. Under *Lanier*, neither the Consumer Fraud Act nor the Deceptive Practices Act requires more extensive disclosure than that prescribed in the Truth in Lending Act. Consequently, Harvey was not entitled to disclosure. His

attempt to rely on the consumer protection statutes, at least insofar as they relate to disclosure of credit information, is misplaced. The trial court did not err in preventing defendant from asserting those statutes as an affirmative defense on the issue of disclosure.

■■ ■ Finally, the credit union argues that it falls within the exceptions to the Consumer Fraud Act and Deceptive Practices Act set forth above because its activities are carried on pursuant to the Credit Union Act (Ill. Rev. Stat. 1985, ch. 17, par. 4401 *et seq.*, formerly codified at Ill. Rev. Stat. 1979, ch. 32, par. 1301 *et seq.*). While we acknowledge the generally controlling role of the Credit Union Act where credit unions are concerned, we do not believe that just because there is such a statute all credit union activity is exempt from consumer protection legislation. To create such an exemption would expose borrowers or, as in this case, guarantors, to the risk of being abused by careless and/or unscrupulous credit union personnel in the course of any activity or transaction which was not addressed by the Credit Union Act. In light of the fact that the Consumer Fraud Act is "[a]n Act to protect consumers and borrowers *** against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*), and the fact that the Illinois legislature has mandated "that the courts of this State utilize the Act to the utmost degree in eradicating all forms of deceptive and unfair business practices and grant appropriate remedies to injured parties" (*Duhl v. Nash Realty, Inc.* (1981), 102 Ill. App. 3d 483, 495, 429 N.E.2d 1267, 1277), we cannot say that credit unions enjoy a blanket exemption from the operation of Illinois' consumer protection legislation.

In our opinion, the better approach to be taken here is the same as that taken by our supreme court in *Lanier*, where, as we pointed out above, the court focused on the specific conduct complained of by the plaintiff and found that it was addressed by applicable Federal legislation. In light of a State policy against imposing requirements under Illinois law over and above those called for by the Federal statute, the court refused to extend the requirements despite the arguably higher standards mandated by the Illinois Consumer Fraud Act. While the precise issue before us revolves around the Credit Union Act rather than Truth in Lending, we find the principles of *Lanier* compelling.

Our adherence to *Lanier* is affirmed by *Johnson v. Marshall Field & Co.* (1974), 57 Ill. 2d 272, 312 N.E.2d 271. In *Johnson*, compliance with the Municipal Retailers' Occupation Tax Act (Ill. Rev. Stat., 1970 Supp., ch. 24, par. 8—11—1 *et seq.*) was a defense to al-

leged violations of the Deceptive Practices Act (Ill. Rev. Stat. 1969, ch. 121½, par. 311 *et seq.*). The plaintiffs in *Johnson* attacked the retailers' practice of passing along the municipal retailers' occupation tax to the consumer. The practice was characterized as an unauthorized collection of the tax because the Municipal Retailers' Occupation Tax Act did not authorize the passing along. Plaintiffs also asserted that adding the tax without disclosing that retailers were not authorized "to collect" the tax violated the Deceptive Practices Act.

The *Johnson* court noted that during the pendency of the case before the trial court the Municipal Retailers' Occupation Tax Act had been amended specifically to allow the retailers' collection practice and that the amendment could be considered relative to earlier legislative intent. But, even aside from the amendment, the court found no violations by the retailers. After examining a companion statute which allowed the passing on of another retailers' tax and reviewing numerous interpretations of the Municipal Retailers' Occupation Tax Act by the Department of Revenue, the court concluded that the legislature had intended to allow retailers to pass on the municipal retailers' occupation tax. Accordingly, the court also observed that defendants had not violated the Deceptive Practices Act and concluded with the following statement:

> "Section 314(1) of the [Deceptive Practices] Act declares the obvious in stating that the Act does not apply to 'conduct in compliance with the orders or rules of or a statute administered by a Federal, state, or local governmental agency.' Ill. Rev. Stat. 1969, ch. 121½, par. 314(1)." *Johnson*, 57 Ill. 2d at 279, 312 N.E.2d at 275-76.

It is evident to us that when the *Johnson* court found authorization for the challenged conduct in the more specific Municipal Retailers' Occupation Tax Act, that conduct was perceived as coming within the exception created by section 314(1), and the generalized requirements of the Deceptive Practices Act became inapplicable to the retailers' practice of passing on the tax.

We believe the approach taken in *Lanier* and *Johnson* accurately reflects the intent of the legislature with regard to the relationship between the consumer protection statutes and other statutes which provide for or regulate specific kinds of activities. That approach affirms the integrity of the specific statutes while ensuring that the consumer is not bereft of the considerable protections afforded by the consumer legislation. In our opinion this balance between statutes should be maintained here also.

The Credit Union Act must be considered because of the language

found in the exceptions created by the consumer protection statutes. According to section 10b(1), the Consumer Fraud Act applies except when challenged conduct is "specifically authorized" by laws administered by a regulatory body or officer of the State. (Ill. Rev. Stat. 1979, ch. 121½, par. 270b.) Likewise, under section 4 of the Deceptive Practices Act (Ill. Rev. Stat. 1979, ch. 121½, par. 314), that act applies except when the conduct is "in compliance" with a statute, orders, or rules administered by, among others, a State agency. The language of the exceptions themselves appears to reflect a State policy against imposing greater requirements under the generalized consumer protection legislation than are imposed by other statutes which address specific kinds of activities and are administered by a State regulatory body. The Credit Union Act is such a specific statute. It sets forth the law relative to credit unions (Ill. Rev. Stat. 1985, ch. 17, par. 4401 *et seq.*) and is administered by the Director of the Illinois Department of Financial Institutions (Ill. Rev. Stat. 1985, ch. 17, par. 4409). Thus, the Credit Union Act will prevail over the Consumer Fraud Act and the Deceptive Practices Act if the conduct attacked is in compliance with, or authorized by, the Credit Union Act.

In the case at bar, the credit union raised the Credit Union Act as a defense to liability under the Consumer Fraud Act. However, plaintiff made no showing that its conduct was in compliance with the Credit Union Act and, therefore, has not shown that it falls within the exceptions to the consumer protection statutes. Absent such a showing, we believe the consumer protection statutes are applicable and Harvey should have been allowed to assert them as a defense to plaintiff's collection action, as well as any provision of the Credit Union Act that is pertinent to the issues created by the evidence.

■ The conclusions we have reached dictate that the trial court correctly refused defendant's jury instructions based on alleged violations of the disclosure provisions of the consumer protection statutes. Since the statutes themselves could not properly be put before the jury on the issue of disclosure, instructions based on the disclosure requirements of the statutes were appropriately excluded. The trial court erred, however, in refusing defendant's jury instructions relative to alleged abuses, other than disclosure violations, delineated by the Illinois consumer protection statutes.

In accord with the reasoning set forth above, the Kane County circuit court's prohibition on the use of Federal and State consumer protection statutes as a defense to disclosure issues is affirmed. Its refusal to allow use of the Illinois Consumer Fraud Act and Deceptive Practices Act as a defense to all other issues, or as a basis for a coun-

terclaim on those issues, is reversed. The matter is remanded for re-trial of all issues, other than disclosure, which are suggested by the Illinois consumer protection statutes or the Illinois Credit Union Act.

Affirmed in part, reversed in part, and remanded.

LINDBERG, P.J., and WOODWARD, J., concur.