FIRST SECURITY BANK OF GLENDALE HEIGHTS, Plaintiff and Counterdefendant-Appellee, v. RICHARD BACHLEDA *et al.*, Defendants (Manning Savings and Loan Association, Counterdefendant-Appellee; Terrace Management, Inc., *et al.*, Defendants and Counterplaintiffs-Appellants).

First District (5th Division)   No. 84—2975

Opinion field December 24, 1987.

William J. Harte, and Edward T. Joyce and Steven J. Rotunno, both of Joyce & Kubasiak, P.C., of Chicago, for appellants.

A. Jeffrey Brown, of Engerman, Erlich, Jacobs & Berman, Ltd., and Peter F. Lovato III and Mimi Lawton Turney, both of Hopkins & Sutter, both of Chicago, for appellees.

JUSTICE PINCHAM delivered the opinion of the court:

This is an appeal by Dr. Harold McGrath from the dismissal of his counterclaim for alleged fraud, misrepresentation, and unjust enrichment against First Security Bank of Glendale Heights (First Security) and Manning Savings and Loan Association (Manning). In the companion case between these parties, *McGrath v. Fahey* (1987), 163 Ill. App. 3d 584, we reversed the trial court's dismissal of McGrath's complaint, which charged the defendants with the infliction of emotional distress upon McGrath by the defendants' intentional and reckless refusal to release McGrath's funds on deposit at First Security. We also reverse the trial court's order dismissing McGrath's counterclaim.

The summary of the allegations of McGrath's counterclaim follows. McGrath and his real estate management company, Terrace Management, Inc. (Terrace), held second mortgages on 92 condominium units in a complex of 16 buildings in Orland Park, Illinois. The first mortgages on these condominium units were held by either First Security or Manning. In September 1983, First Security initiated foreclosure proceedings upon the first mortgages it held on the condominium units, the ultimate consequence of which was to defeat McGrath's interest in the second mortgages. McGrath, in November 1983, filed a 96-count counterclaim against First Security, Manning, the Federal Savings and Loan Insurance Corporation (the FSLIC), as Manning's receiver, and the purchasers of the condominium units. McGrath's counterclaim alleged damages for fraud, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*), and alleged unjust enrichment. The counterclaim also sought equitable and injunctive relief.

More specifically, McGrath's counterclaim alleged that prior to 1982, McGrath and Terrace constructed 16 apartment buildings. First Security was in the business of providing mortgage financing to pur-

chasers of real estate. James Elliot was the president, the majority shareholder, a director, and a member of the loan committee of First Security. Kevin D. Kehoe, Elliot's brother-in-law, was an officer, a director, and a member of First Security's loan committee. The remaining directors and members of First Security's loan committee were relatives of Elliot's. Elliot controlled First Security.

Manning was also in the business of providing mortgage financing to purchasers of real estate. Harold Ticktin controlled Manning as its president, as one of its directors, and as a member of its loan committee. Before McGrath filed his counterclaim, Manning went out of business and the FSLIC became Manning's receiver.

In 1982, McGrath informed his accountant that he wanted to sell the 16 buildings. McGrath's accountant knew Elliot from another real estate transaction and introduced Elliot to McGrath. Elliot told McGrath that he and his brother-in-law, Kehoe, would locate persons financially qualified to purchase the buildings; that First Security, under the direction of Elliot, and Manning, under the direction of Ticktin, would provide the necessary financing to the purchasers; and that through Elliot, Kehoe, and Ticktin, First Security and Manning had recently successfully financed another similar purchase and resale of apartment buildings.

Thereafter, First Security and Manning, by and through Elliot, Kehoe, and Ticktin, developed a scheme to cheat and defraud McGrath. The scheme was that First Security and Manning would purchase the buildings, convert them into condominiums, and sell the condominium units as investment rental property. The purchasers of the units would not make down payments on the purchase price, but, rather, First Security or Manning would hold a first mortgage for a portion of the purchase price, and the balance was to be secured by second mortgages held by McGrath. First Security and Manning would charge the purchasers closing fees and interest at higher than market rates. The scheme further provided that First Security and Manning would deposit $10,000 as a part of the purchase price of each unit into non-interest bearing escrow accounts at First Security and Manning, from which payment of each purchaser's monthly first and second mortgage installments were to be paid. First Security and Manning, through Elliot, Kehoe, and Ticktin, presented the scheme to prospective purchasers of the condominium units, and specifically told the purchasers that they were not required to repay McGrath's second mortgages. To induce McGrath to sell his buildings, Elliot, Kehoe, and Ticktin assured McGrath that First Security and Manning would sell the units only to financially qualified purchasers

whose creditworthiness First Security and Manning would investigate and ensure. Additionally, First Security and Manning promised McGrath that they would manage the condominiums, rent the condominium units, and collect the rents for deposit into the escrow accounts and that if the $10,000 and the rents collected in the escrow accounts were insufficient to pay the monthly installments to First Security and Manning, and the second mortgage installments to McGrath, then the purchasers would be required to make the payments due to McGrath with their own funds.

After McGrath sold his buildings to First Security and Manning, First Security and Manning converted them into condominiums and sold the units to the purchasers. McGrath then learned that he had been defrauded. Neither First Security nor Manning had the units appraised to determine their fair market value, and First Security and Manning did not determine that the purchasers were creditworthy. Neither First Security nor Manning ever intended to manage the condominiums, rent the units, or collect the rents for the repayment of McGrath's second mortgages; the purchasers did not make their second mortgage payments because they were not financially able, nor did they intend to repay the second mortgages with their own money; and First Security and Manning specifically informed the purchasers that they would not be required to repay the second mortgages. As a result of the fraud, McGrath undersold his buildings by $2 million and lost $1,500,000 on the installment notes and second mortgages. After the escrow accounts were depleted, First Security initiated the foreclosure proceedings and McGrath filed his counterclaim.

First Security and the FSLIC, Manning's receiver, filed motions to dismiss McGrath's counterclaim, arguing that the counterclaim failed to set forth sufficient facts to state a cause of action for common law fraud, consumer fraud, or unjust enrichment.

After hearing oral arguments on the motions to dismiss, the trial court stated:

> "[First Security and Manning have] done nothing else but furnish proceeds of a first mortgage and has [sic] collected pursuant to the issuance of such mortgages fees of various types and costs of various types that are customary to be furnished in a bank and charged by a bank in connection with the preparation and issuance of mortgages. I see nothing fraudulent in that procedure. Consequently, I will sustain the motion of the bank and dismiss on the count alleging fraud and misrepresentation."

Thus, on the hearing of First Security's and Manning's motions to dismiss McGrath's counterclaim, on the ground that the counterclaim failed to allege a cause of action, the trial judge did not accept the facts pleaded in the counterclaim as true. Instead, in dismissing the counterclaim, the trial judge rejected the facts pleaded in the counterclaim and became a fact finder of the alleged and controverted facts, in the absence of an evidentiary hearing. The trial judge determined the factual merits of the pleading rather than the legal sufficiency of the allegations of McGrath's counterclaim.

The trial court dismissed McGrath's counterclaim with prejudice. McGrath orally sought leave to file an amended counterclaim, but the trial court denied the request. McGrath then filed a written motion for leave to file an amended counterclaim and a memorandum of authorities and arguments in support of his motion for leave to file an amended counterclaim. The memorandum set forth the reasons that an amended counterclaim would cure any pleading defects in the original counterclaim. The trial court also denied McGrath's written motion for leave to file an amended counterclaim. Thus, the trial court held that, as a matter of law, under no circumstances could McGrath allege any cause of action or recover against First Security and Manning.

In *Schenker v. Chicago Title & Trust Co.* (1984), 128 Ill. App. 3d 488, 491-92, 470 N.E.2d 1264, we reversed the trial court's dismissal of a litigant's complaint without leave to amend. We stated:

> "It is recognized that the decision whether to allow an amendment to a complaint lies within the sound discretion of the trial court, and its decision will not be disturbed absent a showing of an abuse of that discretion. [Citation.] *A trial court's power to allow amendments should be freely exercised in order that litigants may fully present their causes of action.* [Citation.] The test to be applied in this regard is whether a denial of the request to amend furthers the ends of justice. [Citation.]
>
> *** [A]n amendment will be allowed where justice is not served by denying leave to amend. [Citation.] Further, doubts should be decided in favor of allowance of the amendment. [Citation.]
>
> *** While we recognize that a trial court may consider the efficacy of [a] claim in passing on a motion to amend and that it is proper to deny leave if the proposed amendment does not cure the defects [citation], we believe that the trial court's somewhat summary disposition of plaintiff's request to file a

second amended complaint was improper. \*\*\*.\* [P]laintiff's request for leave to amend should have been granted." (Emphasis added.)

Likewise, in the case at bar, we believe that, in light of McGrath's pleading and the trial court's foregoing statements and factual conclusions in dismissing McGrath's counterclaim, the denial of McGrath's motion for leave to file an amended counterclaim was improper. The dismissal order was contrary to the mandate of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 1—101 *et seq.*), which provides that the statute governing pleadings shall be liberally construed according to the substantive rights of the parties.

■■ The ultimate question here is whether McGrath's counterclaim is legally sufficient or whether McGrath could possibly allege any cause of action against First Security and Manning. It is well settled that pleadings should not be dismissed unless there is no set of facts which can be alleged which would entitle the pleader to recover. If, on the facts alleged and the inferences reasonably drawn therefrom, there is any possibility of recovery, the order of dismissal must be vacated. See *Bureau of Credit Control v. Scott* (1976), 36 Ill. App. 3d 1006, 345 N.E.2d 37.

■■ McGrath in his counterclaim attempted to allege that the executives of First Security and Manning knowingly and intentionally misrepresented material facts to induce him to enter into a fraudulent transaction for the sale of his buildings and that he believed and justifiably relied on First Security's and Manning's misrepresentations to his detriment. We cannot say that as a matter of law McGrath could not possibly plead any cause of action as against First Security and Manning. See *National Republic Bank v. National Homes Construction Corp.* (1978), 63 Ill. App. 3d 920, 381 N.E.2d 15.

McGrath also alleged that First Security's and Manning's misrepresentations to him regarding the installment notes and second mortgages constituted violations of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*), which in pertinent part provides:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression, or omission of such material fact, or the use or employment of any practice described in Section 2

of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." (Ill. Rev. Stat. 1985, ch. 121½, par. 262.)

And:

"(a) Any person who suffers damage as a result of a violation of Sections 2 through 2O of this Act committed by any other person may bring an action against such other person. The court, in its discretion may award actual damages or any other relief which the court deems proper." Ill. Rev. Stat. 1985, ch. 121½, par. 270a(a).

■■ ■ A plaintiff suing under the Act need not establish all of the elements of common law fraud, as the Act prohibits any deception or false promise. (*Duhl v. Nash Realty Inc.* (1981), 102 Ill. App. 3d 483, 495, 429 N.E.2d 1267.) McGrath's counterclaim alleged that First Security and Manning misrepresented material facts to him, intending that he relinquish his buildings to them, and that he did not receive the consideration for which he bargained. The Act, which affords even broader consumer protection than the common law action of fraud, makes it unlawful for those engaged in trade or commerce to defraud consumers, and it provides defrauded consumers with legal and equitable relief. Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*

■■ We cannot say as a matter of law that under no circumstances could McGrath allege any cause of action against First Security and Manning. He was entitled to a further opportunity to attempt to do so. The trial court, therefore, erred in denying McGrath leave to file an amended counterclaim. Accordingly, we reverse and remand.

Reversed and remanded.

HARTMAN and RIZZI, JJ., concur.