JOSEPH E. SIEGEL, Plaintiff-Appellant, v. LEVY ORGANIZATION DEVELOPMENT COMPANY, INC., *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—89—1881

Opinion filed September 18, 1991.

GREIMAN, J., concurring in part and dissenting in part.

Bernard L. Rivkin, of Chicago, for appellant.

Schiff, Hardin & Waite, of Chicago, for appellees.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff Joseph E. Siegel (Siegel) appeals from an order of the circuit court of Cook County which granted defendants the Levy Organization Development Co., Inc. *et al.*'s (Levy Organization's) motion for summary judgment on all counts of Siegel's eight-count third amended complaint for rescission, restitution and other relief. On appeal, Siegel contends that (1) this cause of action was improperly transferred from the chancery to the law division of the circuit court; and (2) the trial court erred in granting the Levy Organization's motion for summary judgment. We affirm in part and reverse and remand in part.

On January 26, 1981, Siegel entered into a purchase agreement with the Levy Organization as agent of the beneficiaries of a La Salle National Bank land trust for the purchase of a condominium unit in the One Magnificent Mile (OMM) luxury development located on Michigan Avenue in Chicago. The condominium purchase price was $1.6 mil-

lion. The relationships of the other defendants to this matter are as follows. One Magnificent Mile Partnership and One Magnificent Mile Condominium Partnership were beneficiaries of the land trust. Sheffield Properties, Inc., and Lomm Commercial Partnership were general partners of One Magnificent Mile Partnership. The Levy Organization and Lawrence F. Levy (Levy) are general partners of Lomm Commercial Partnership. Lomm Condominium Partnership and Newcastle Properties, Inc., are general partners of One Magnificent Mile Condominium Partnership. Levy is president of the Levy Organization.

Siegel is a commodities trader. He and his fiancee, Kay Kimberly (now Siegel), were interested in purchasing a condominium residence expansive enough to entertain large groups of people. In late 1979 or early 1980, Kay Kimberly saw a newspaper advertisement regarding OMM. As a result of this advertisement, the Siegels met with Levy, and Levy Organization vice-president, Helen Jaeger (Jaeger), at the OMM sales office. During the course of this initial discussion and all subsequent negotiations relative to the purchase of an apartment in OMM, the Siegels stated their desire for an apartment large enough for entertaining on a lavish scale.

According to Siegel, at the initial meeting Levy turned the discussion toward OMM unit 48A, which he claimed was suitable for the Siegels' needs. Levy informed the Siegels that apartment 48A would be the largest apartment in the development and that it would have a "very special terrace arrangement, whereby you could have a band there and have tables and chairs and people dancing on it." Levy called it a "dancing terrace." Jaeger and Levy showed the Siegels a scale model of OMM. The scale model showed terraces unobstructed by pillars or posts. The conversation at the initial meeting focused on the terrace for unit 48A. Levy's representations with respect to the expansive, 500-square-foot open terrace became a key attraction for the Siegels. At deposition, Levy denied ever promising the Siegels a "dancing terrace." However, Levy testified that the model of unit 48A which he showed to the Siegels did not contain posts called "mullions."

During the course of negotiations with the Levy Organization, the Siegels were given a sales brochure and property report which contained floor plans for unit 48A. Henry Mikolajczyk is an architect and professional engineer who was retained by Siegel as an expert witness in the instant litigation. He reviewed the floor plan for the apartment contained in the Levy Organization's 8½- by 11-inch sales brochure and the floor plans contained in the OMM property report. In an affidavit submitted in opposition to the defendants' summary judgment motion, Mr. Mikolajczyk stated that those plans did not disclose the

existence of free-standing mullions or other obstructions on the terrace of unit 48A. However, according to Jaeger, a full-size copy of the floor plan was attached to the purchase agreement. Paragraph 3 of the purchase agreement provides that unit 48A "shall be constructed substantially in accordance with the floor plan attached as exhibit B hereto and made a part hereof." The floor plan included architectural drawings indicating the presence of mullions on the terrace. The parties disagree about whether a floor plan of the apartment was among the documents attached to the agreement.

Edward Faron, an architect hired by Siegel in 1981 to work on the interior plan of the apartment, reviewed floor plans for unit 48A prepared by Skidmore, Owens and Merrill, one of defendants' architects. Mr. Faron made trace drawings of these plans. During a discovery deposition, Mr. Faron testified that the drawings and plans which he reviewed did not reveal the presence of mullions on the terrace and that, in fact, he did not become aware of their existence until September 6, 1983, when he was allowed to view the partially completed apartment.

Paragraph 5 of the purchase agreement provided, in pertinent part, that "it is estimated that the purchased unit will be substantially completed by August 3, 1983 (estimated completion date), subject to extensions for delays occasioned by strikes, material shortages, labor shortages, casualties, inclement weather conditions, acts of God and other causes beyond the reasonable control of seller." Paragraph 12 of the contract provided that "time is of the essence of this Purchase Agreement." This provision expressly granted Siegel the right to a refund of all earnest money deposits, plus interest, should the defendants be in default of their obligations.

Siegel subsequently requested remodeling work on the unit which cost $66,594. On November 22, 1982, Siegel entered into a first amendment to purchase agreement with the Levy Organization which incorporated the additional work and its cost. In lieu of a cash earnest money deposit in down payment, Siegel delivered to Levy two unconditional, irrevocable letters of credit in the sum total of $386,594.

On February 14, 1983, the Levy Organization sent Siegel a letter informing him that his irrevocable letter of credit expired on August 24, 1983. The correspondence stated, in part:

> "As you know, if we do not receive the replacement letter of credit, or the extension of the letter of credit by thirty days prior to August 24, 1983, we are entitled to draw on the letter of credit."

On March 3, 1983, Jaeger sent Siegel a letter which stated as follows:

> "We would like to advise you concerning the new estimated completion date of the purchased unit. We now estimate, based on construction of the building to date and the construction schedule, the purchased unit will be substantially completed on December 5, 1983. The estimated completion date set forth in your contract was delayed due to the adverse winter weather conditions last year and other causes beyond our control. If you have ordered extras or credits, you should be aware that the date of substantial completion set forth above is the date upon which it is estimated that the purchased unit would be substantially completed but for the extras and credits."

Nine days after the March 3 letter, Siegel extended the letters of credit until December 31, 1983. In August of 1983, the Siegels viewed the partially completed apartment for the first time. They discovered that the terrace was obstructed by the presence of mullions, spaced approximately 2½ feet apart, which were centered across the length of the terrace. Siegel immediately demanded that the posts be removed. Levy responded in writing as follows:

> "I have first asked our technical people to show you the drawings for the removal of the posts on the terrace. I want you to know exactly what we are doing and then we will both sign the drawings. This is a major cost item, but one which I will bear to make you happy."

Notwithstanding these representations, Siegel was subsequently told that the mullions could not be removed because, according to the OMM construction superintendent, it was not practicable to construct an obstruction-free terrace for unit 48A.

On October 21, 1983, Siegel, through counsel, terminated the purchase agreement. His notice of termination was addressed to Levy and stated that among other reasons, the contract was being cancelled due to inconsistent statements concerning the feasibility of removing all the mullions from the terrace, an apparent reluctance on the part of the Levy Organization to abide by the original design specifications and failure to complete or project completion of the project in a timely manner. Siegel demanded the return of his down payment, but the Levy Organization drew on the letters of credit which he had posted.

Siegel filed a complaint in the chancery division of the circuit court for rescission, restitution and other relief. The Levy Organization moved to transfer the cause to the law division on the ground that

Siegel had an adequate remedy at law. Over Siegel's objection, the trial court granted the Levy Organization's transfer motion.

Siegel's third amended complaint contained eight counts. Count I alleged fraud on the part of Levy and the Levy Organization with respect to misrepresentations as to unit 48A having an open, expansive terrace. Count II requested or sought rescission of the purchase agreement predicated on a theory of unilateral mistake by Siegel with respect to the terrace issue. Count III sought rescission on the ground that the defendants breached the purchase agreement by failing to complete the apartment by August 3, 1983. Count IV alleged that Siegel is entitled to rescission by virtue of the defendants' reduction in price of condominium units in OMM which diminished the value of Siegel's apartment. Count V sought recovery under section 2 of the Consumer Fraud and Deceptive Practices Act based on the foregoing alleged misconduct. (Ill. Rev. Stat. 1987, ch. 121½, par. 262.) Count VI alleged a cause of action for breach of contract, and counts VII and VIII alleged that Siegel is entitled to punitive damages due to the Levy Organization's alleged fraud and negligent misrepresentation. The trial court granted the Levy Organization's motion for summary judgment on all counts of Siegel's complaint. This appeal followed.

Siegel first contends that the trial court erred in granting the Levy Organization's transfer motion. It is Siegel's position that his cause of action was properly filed in the chancery rather than the law division of the circuit court. We disagree.

Equitable relief is not available if there is an adequate remedy at law. (*La Salle National Bank v. Refrigerated Transport Co.* (1987), 165 Ill. App. 3d 899, 900, 520 N.E.2d 768, 769.) For the remedy at law to be adequate it must be clear, complete, and as practical and efficient to the ends of justice and its prompt administration as the equitable remedy. (*Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 548, 370 N.E.2d 223, 227.) Equity does not entertain complaints the fundamental subject of which is to secure monetary damages. (*La Salle National Bank*, 165 Ill. App. 3d at 901.) However, the judicial article embodied in the Illinois Constitution of 1970 has abolished the distinction between courts of law and equity so that our circuit courts have original jurisdiction of all justiciable matters. The divisions of the circuit court of Cook County, law division *vis-a-vis* chancery division, are for administrative purposes only and no longer constitute jurisdictional barriers. *Meyer v. Murray* (1979), 70 Ill. App. 3d 106, 115, 387 N.E.2d 878, 885.

■ Here, count VI of the third amended complaint sought, in the alternative to Siegel's claim for rescission and restitution, actual and

compensatory damages in the amount of $386,594. The damage figure represents the amount of all monies paid by Siegel under the letters of credit. Because Siegel's complaint on its face spells out an adequate remedy at law, equitable relief is not available. Siegel's action for damages was as practical and efficient to the ends of justice as an equitable remedy. Furthermore, since the law division has jurisdiction to hear all the issues involved in this matter, the case should be heard in its entirety in the law division. We therefore conclude that the trial court did not err in transferring Siegel's complaint from the chancery to the law division of the circuit court.

Siegel next contends that the trial court erred in granting the Levy Organization's motion for summary judgment on all counts of his complaint. We agree that the trial court erred in granting summary judgment in favor of the Levy Organization on count I of Siegel's complaint, but find no error in its grant of judgment for the Levy Organization on counts II through VIII of the complaint.

Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (*Lane v. City of Harvey* (1988), 178 Ill. App. 3d 270, 273, 533 N.E.2d 75, 78; Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) The aim of summary judgment is not to try issues but to determine whether any triable issues exist. (*Staton v. Amax Coal Co.* (1984), 122 Ill. App. 3d 631, 633, 461 N.E.2d 612, 614.) Evidence in support of the motion must be strictly construed against the moving party, and summary judgment should be denied where reasonable persons could arrive at different conclusions. (*Petkus v. Girzadas* (1988), 177 Ill. App. 3d 323, 327, 532 N.E.2d 333, 336.) An order granting summary judgment must be reversed if a reviewing court determines that an issue of material fact exists. *Arnold v. Village of Chicago Ridge* (1989), 181 Ill. App. 3d 778, 785, 537 N.E.2d 823, 827.

■ Count I of the third amended complaint alleges that Siegel was induced into executing the purchase agreement for unit 48A by virtue of the defendants' representations that the unit would be an open, expansive terrace. The complaint seeks rescission of the agreement on the basis of common law fraud. The record indicates that Siegel was shown a scale model of a unit in OMM which did not reveal the existence of any posts, mullions or other obstructions on any of the terraces. Brochures and a property report were distributed to Siegel which failed to demonstrate the existence of any posts, mullions or other obstructions on the terrace of the apartment. In addition, both

Siegel and his wife testified that Levy told them that unit 48A would have a special terrace arrangement whereby a band and tables and chairs could be arranged to form a dancing terrace. Levy denied promising the Siegels a dancing terrace.

The affidavit of Siegel's witness, architect and engineer Henry Mikolajczyk, indicated that the brochure and drawings of the apartment upon which Siegel relied did not reveal the existence of posts, mullions, or other obstructions on the terrace. The deposition testimony of Faron, another architect employed by Siegel, is consistent with Mikolajczyk's affidavit.

In support of its motion for summary judgment, the Levy Organization contended that (1) Siegel admitted that the Levy Organization did not represent that the terrace to unit 48A would be free of posts or mullions and that therefore neither the Levy Organization nor its agents made any false statements upon which Siegel could have relied; (2) neither the purchase agreement nor the first amendment specifically provided that the terrace to unit 48A would be open and unobstructed; and (3) even if the Levy Organization through its agents made the alleged representations regarding the expansive, mullion-free terrace, those statements were merely opinions and prognostications which cannot support a fraud claim. In addition, Jaeger testified that a full-size copy of the floor plan which indicated the presence of mullions was attached to the purchase agreement.

Under Illinois law, six elements must be alleged and proven in order to establish a claim for common law fraud: (1) a false statement of material fact; (2) the party making the statement knew or believed it to be untrue; (3) the party to whom the statement was made had a right to rely on the statement; (4) the party to whom the statement was made did rely on the statement; (5) the statement was made for the purpose of inducing the other party to act; and (6) the reliance by the person to whom the statement was made led to that person's injury. *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 185-86, 441 N.E.2d 324, 331.

Viewing the evidence in this case most strictly against the Levy Organization, we conclude that material issues of fact remain which preclude the entry of summary judgment on count I of Siegel's complaint. It is uncontroverted that Siegel was shown a scale model of the condominium unit which failed to disclose the presence of posts or mullions. The 8½- by 11-inch OMM brochure and property report which were distributed to Siegel prior to his purchase of the unit did not disclose the existence of posts or mullions on the terrace. In addition, according to Siegel, Levy expressly stated that unit 48A would have a

special terrace arrangement that would be expansive enough for a band, tables and dancing. Siegel provided the expert testimony of two architects who corroborated his testimony regarding the absence of posts or mullions on the sales brochure and property reports for OMM. In sum, examining the facts of the case in light of the necessary elements of a cause of action for fraud and the requirements for granting of summary judgment, we conclude that the trial court erred in granting summary judgment in favor of the Levy Organization and against Siegel on count I of his complaint. Numerous issues of material fact remain which compel this court to reverse the trial court's order granting summary judgment on count I of Siegel's complaint.

Accordingly, for all of the foregoing reasons, the order of the circuit court of Cook County which granted the Levy Organization's motion to transfer this matter from the chancery to the law division of the circuit court is affirmed; the portion of the order which granted the Levy Organization's motion for summary judgment on counts II through VIII of Siegel's complaint is affirmed; and the portion of the order which granted the Levy Organization's motion for summary judgment on count I of Siegel's complaint is reversed and remanded for further proceedings.

Affirmed in part; reversed and remanded in part.

CERDA,* P.J., concurs.

JUSTICE GREIMAN, concurring in part and dissenting in part:
I concur with the result reached by the majority on all issues except their decision to affirm the trial court's dismissal of count V. I would find that it was error to enter summary judgment as to count V, which seeks statutory relief under the Consumer Fraud and Deceptive Business Practices Act (Act) (Ill. Rev. Stat. 1987, ch. 121½, par. 262).
Section 2 of the Act provides in relevant part as follows:
"[U]nfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in

---

*Justice White heard oral arguments in this appeal prior to his retirement. Justice Cerda was designated the third member of the panel and has read the briefs and listened to the tapes.

Section 2 of the 'Uniform Deceptive Trade Practices Act' *** in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." Ill. Rev. Stat. 1987, ch. 121½, par. 262.

"There is a clear mandate from the Illinois legislature that the courts of this State utilize the Act to the utmost degree in eradicating all forms of deceptive and unfair business practices and grant appropriate remedies to injured parties." *Duhl v. Nash Realty, Inc.* (1981), 102 Ill. App. 3d 483, 495, 429 N.E.2d 1267; *People ex rel. Hartigan v. All American Aluminum & Construction Co.* (1988), 171 Ill. App. 3d 27, 33, 524 N.E.2d 1067; *Aurora Firefighter's Credit Union v. Harvey* (1987), 163 Ill. App. 3d 915, 924, 516 N.E.2d 1028.

Consistent with the legislature's mandate, this court has held that section 2 of the Act applies to misrepresentations by real estate brokers to prospective purchasers. *Seligman v. First National Investments, Inc.* (1989), 184 Ill. App. 3d 1053, 540 N.E.2d 1057; see also *Harkala v. Wildwood Realty, Inc.* (1990), 200 Ill. App. 3d 447, 558 N.E.2d 195 (the Act was not intended to impose liability upon a broker for latent or hidden defects such as concealed signs of termite damage); *Beard v. Gress* (1980), 90 Ill. App. 3d 622, 413 N.E.2d 448.

The Act is intended to provide even broader consumer protection than the common law action of fraud. (*Harkala,* 200 Ill. App. 3d at 453; *First Security Bank v. Bachleda* (1987), 165 Ill. App. 3d 725, 520 N.E.2d 660.) Since the Act prohibits any deception or false promise, a plaintiff suing under the Act need not establish all of the elements of common law fraud. (*First Security Bank,* 165 Ill. App. 3d at 731; *Duhl,* 102 Ill. App. 3d at 495.) To establish a violation of the Act, a plaintiff must show a deceptive act or practice, an intent by the defendant that the plaintiff rely on the deception, and that the deception occurred in the course of conduct involving a trade or commerce. *Carl Sandburg Village Condominium Association No. 1 v. First Condominium Development Co.* (1990), 197 Ill. App. 3d 948, 952, 557 N.E.2d 246.

Under the Act, liability is not limited to existing material facts because the language of the Act specifically includes false promises. (*Duhl,* 102 Ill. App. 3d at 495.) Furthermore, the good or bad faith of the seller is irrelevant, and a plaintiff can recover for even innocent or negligent misrepresentations. (*Harkala,* 200 Ill. App. 3d at 453; *Duhl,* 102 Ill. App. 3d at 495.) Moreover, a plaintiff need not show actual reliance or diligence in ascertaining the accuracy of the misstatements. (*Harkala,* 200 Ill. App. 3d at 453; *Beard,* 90 Ill. App. 3d at 627-28 ("neither the mental state of the person making a misrepresentation nor the diligence of the party injured to check as to the accuracy of the misrepresentation

[is] material to the existence of a cause of action" under the Act).) Thus, a plaintiff's burden of proof under the Act differs from the elements which must be established in common law fraud.

In 1982 the Act was amended to alter the "state of mind" required as to the sale of real estate located in Illinois by real estate brokers or salesmen. (Ill. Rev. Stat. 1983, ch. 121½, par. 270b(4).) Since the purchase agreement at issue was executed in 1981, the amendment is inapplicable to this case. See *Warren v. LeMay* (1986), 142 Ill. App. 3d 550, 574, 491 N.E.2d 464.

Additionally, in derogation of common law, the Act provides that the court may grant reasonable attorney fees and costs to the prevailing party. Ill. Rev. Stat. 1987, ch. 121½, par. 270a(c); *Chesrow v. Du Page Auto Brokers, Inc.* (1990), 200 Ill. App. 3d 72, 557 N.E.2d 1301; *Kleidon v. Rizza Chevrolet, Inc.* (1988), 173 Ill. App. 3d 116, 527 N.E.2d 374; *Warren v. LeMay* (1986), 142 Ill. App. 3d 550, 491 N.E.2d 464.

This court has held that acts which constitute common law fraud also violate the Act. (*Zimmerman v. Northfield Real Estate, Inc.* (1986), 156 Ill. App. 3d 154, 510 N.E.2d 409.) In *Zimmerman*, this court stated:

"We have already held that the complaint sufficiently alleged the elements of fraud. Our finding that plaintiffs have stated a cause of action for fraud is sufficient to warrant the conclusion that the same acts violate the Consumer Fraud Act because the Act prohibits any misrepresentation at all." (*Zimmerman*, 156 Ill. App. 3d at 168.)

Similarly, a trial court's directed verdict in defendant's favor as to the Act was reversed because the plaintiff stated a *prima facie* case of common law fraud. (*Salkeld v. V.R. Business Brokers* (1989), 192 Ill. App. 3d 663, 548 N.E.2d 1151.) Following this court's holding in *Zimmerman*, the court in *Salkeld* held that the determination of the existence of common law fraud was "sufficient to warrant the conclusion that the same acts violated the Consumer Fraud Act because the Act prohibits any misrepresentation at all." (*Salkeld*, 192 Ill. App. 3d at 677.) Where, as in the present case, material issues of fact are found to remain as to preclude the entry of summary judgment on a common law fraud count, so also should this finding preclude the entry of summary judgment as to the count based on the Act.

In light of these established principles and for all the reasons included in the majority's decision to allow the common law fraud claim to stand, I believe that the trial court's order granting summary judgment on the statutory fraud claim (count V) should be reversed.