WALTER KLEIDON *et al.*, Plaintiffs-Appellees, v. RIZZA CHEVROLET, INC., Defendant-Appellant.

First District (5th Division)   No. 86—1311

Opinion filed July 8, 1988.—Rehearing denied August 19, 1988.

118

Whitman H. Brisky and Jeffrey E. Schiller, both of Chicago (Walsh, Case, Coale & Brown, of counsel), for appellant.

Andy Norman and Jonathan Nachsin, both of Norman & Nachsin, of Chicago, for appellees.

JUSTICE PINCHAM delivered the opinion of the court:

Plaintiffs, husband and wife, Walter and Fayle Kleidon, initiated their three-count complaint against the defendant, Rizza Chevrolet, Inc. (Rizza), a retail merchant of new and used motor vehicles. The complaint alleged that Rizza misrepresented or misstated the purchase price and interest rate contained in the 1984 purchase contract and retail installment contract of a Chevrolet Celebrity automobile purchased by plaintiffs from Rizza. In count I of the complaint, plaintiffs maintained these alleged misstatements violated the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 261 et seq.) and sought $5,000 in damages plus attorney fees. In count II of the complaint, plaintiffs alleged that these misstatements constituted common law fraud and sought $5,000 in punitive damages. Count III, which was settled by agreement prior to trial, alleged the misstatements violated the Truth-in-Lending Act and sought actual damages of $1,000 plus attorney fees at the conclusion of trial. The trial court found that the misrepresentations or misstatements had occurred with respect to the interest rate, but that they were not fraudulent or intentional on the part of Rizza. Based upon these findings, the trial court found for the plaintiffs on count I and for Rizza on count II. The trial court awarded plaintiffs $1,723.20 in actual damages, $1,000 in punitive damages and $1,000

in damages for pain and suffering. The trial court also awarded plaintiffs' attorneys $14,400 in attorney fees and $101.92 in costs, all under count I of the complaint. Rizza has appealed from the trial court's entry of judgment and award of damages under count I.

In their complaint plaintiffs alleged that on October 30, 1984, they purchased from Rizza a new 1985 Chevrolet Celebrity automobile and that Rizza made the following misrepresentations or misstatements to plaintiffs, in violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*), which allegedly constituted common law fraud:

"7. Prior to sale Rizza represented to the Kleidons that although the sticker price of the car was $10453.00, the Kleidons could purchase the car for $9,000.00.

8. In the purchase order the price of the car was listed as $10998.00.

9. In the retail installment contract the purchase price was listed as $11731.15 (including taxes but no accessories or services).

10. The foregoing representations and course of conduct on the part of Rizza was unfair and deceptive, in violation of Ill. Rev. Stat. ch. 121½, sec. 262 (and by incorporation therein, 312).

11. On October 30, 1984 Rizza had the Kleidons execute the retail installment contract in blank, and did not give the Kleidons a filled in copy until approximately three weeks after the transaction had been consummated, which was unfair and deceptive.

12. Upon receiving the retail installment contract from Rizza the Kleidons learned that Rizza had charged them $273.66 for a credit life insurance policy that they had not requested, which was unfair and deceptive.

13. Prior to purchase of the Chevrolet Rizza represented to Mr. & Mrs. Kleidon that Rizza would arrange financing through General Motors Acceptance Corporation at an annual percentage rate of 12.5%.

14. This representation was false, unfair and deceptive in that the annual percentage rate in the retail installment contract prepared by Rizza was 21.53%.

15. The foregoing unfair and deceptive trade practices have caused the Kleidons to become obligated to General Motors Acceptance Corporation for 48 payments of $219.28, as reflected by Exhibit C.

16. In accordance with Ill. Rev. Stat. ch. 121½, sec. 270a Mr. & Mrs. Kleidon and their attorney claim their attorneys fees from Rizza.

WHEREFORE, Mr. & Mrs. Kleidon pray that this Honorable Court:

A. Enter judgment on their behalf in the amount of $5,000.00 plus attorneys fees and cost ***."

On September 25, 1985, Rizza filed its answer to plaintiffs' complaint and denied all of plaintiffs' foregoing alleged misrepresentations. After the evidence was presented and arguments heard, the trial court entered, *inter alia*, the following judgment:

"B. Judgment is to be entered in favor of plaintiffs under *Count I* of the complaint in the amount of $1723.20 actual damages, $1,000 mental anguish and $1,000 punitive damages for a total of $2723.20 plus costs of this action.

C. Judgment is to be entered in favor of defendant under *Count II* of the complaint."

On appeal, Rizza argues the trial court erred in assessing liability against Rizza under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1985, ch. 121½, par. 261 *et seq.*). The plaintiffs, however, maintain the trial court's ruling was supported by ample evidence.

■ To establish a violation of the Consumer Fraud Act, the plaintiffs must show a misrepresentation, concealment or omission of a material fact with intent that others rely on that fact. (Ill. Rev. Stat. 1985, ch. 121½, par. 262.) The record clearly reflects that a misrepresentation or misstatement and omission of a material fact occurred with respect to the interest rate in the case at bar. Both plaintiffs, Mr. and Mrs. Kleidon, testified that they told Rizza that they could get an automobile loan from Citicorp at an interest rate of 12.9%. In response plaintiffs were told by the defendant that plaintiffs could do better with a General Motors Acceptance Corporation (GMAC) loan at a 12.5% interest rate. Defendant's general sales manager, Mr. Youngblood, testified that he remembered the plaintiffs were interested in getting 12.9% interest rate at Citicorp and that he told them "we can go through General Motors Financing and I could set it up with our business manager where he could give them *** a very competitive rate."

■ In order to be considered material, the concealed fact must have been such that had the other party known of it, he would have acted in a different manner. (*Perlman v. Time, Inc.* (1985), 133 Ill. App. 3d 348, 478 N.E.2d 1132.) Clearly, in the instant case, had

plaintiffs known that the interest rate of the GMAC loan was going to be 21.5%, plaintiffs would have acted in a different manner and taken the Citicorp loan of 12.9% interest rate. Instead, believing the GMAC interest rate was going to be 12.5%, plaintiffs signed a blank retail installment contract, which did not have set forth therein the rate of interest of the automobile loan.

■ One of the requirements of a retail installment contract, under section 3(a) of the Motor Vehicle Retail Installment Sales Act (Ill. Rev. Stat. 1985, ch. 121½, par. 563(a)), is that the contract be "completed as to all essential provisions, before it is signed by the buyer." It is essential under section 5(10) (Ill. Rev. Stat. 1985, ch. 121½, par. 565(10)) that the retail installment contract disclose "[t]he finance charge expressed as an annual percentage rate, using the term 'annual percentage rate.' " (Ill. Rev. Stat. 1985, ch. 121½, par. 565(10).) At the time plaintiffs signed the contract an essential provision of the contract was omitted, namely, the "annual percentage rate."

■ The evidence established that an error was made in the first retail installment contract and that a new contract had to be written. Because it was at the end of the day and plaintiffs had been at Rizza's dealership all day, plaintiffs were requested to and did sign a blank retail installment contract and were informed that a completed copy would be mailed to them. Mrs. Kleidon testified that they chose not to wait because they were tired. It is clear from the record that when the retail installment contract was signed it was incomplete as to an essential provision: the "annual percentage rate" was omitted.

For these foregoing reasons, we affirm the trial court's finding that there was a violation under the Consumer Fraud Act.

■ The next issue raised by Rizza concerns the damages award. Rizza contends that the award of punitive damages was improper. It has long been established in Illinois that punitive or exemplary damages may be awarded "when torts are committed with fraud, actual malice, deliberate violence or oppression, or when the defendant acts willfully, or with such gross negligence as to indicate a wanton disregard of the rights of others. [Citation.] Where punitive damages may be assessed, they are allowed in the nature of punishment and as a warning and example to deter the defendant and others from committing like offenses in the future." (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186.) Punitive damages are not favored in the law, and courts must take caution to insure that such damages are not improperly or unwisely awarded. (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172.) In determining entitlement to punitive damages, each case must be considered in its own context. *Gent v. Collinsville*

*Volkswagen, Inc.* (1983), 116 Ill. App. 3d 496, 505, 451 N.E.2d 1385, 1391.

■ The record here does not support the punitive damage award made by the trial court. Taken as a whole, the record does not establish a pattern of bad faith by Rizza during its dealings with plaintiffs. In fact, the trial court specifically found that Rizza did not act deliberately, willfully, or with fraud in its dealings with plaintiffs. The trial court awarded punitive damages because Rizza was "obstinate" in its refusal to satisfy plaintiffs' concern. However, Rizza did satisfy most of plaintiffs' complaints soon after the complaints were made and prior to plaintiffs' suit being filed. Therefore we are unable to say, given the evidence of Rizza's conduct, that the punitive damage award was proper. Accordingly, we reverse the punitive damage award.

Rizza argues further that the award of pain and suffering damages was improper. Rizza maintains that no allegation was made that Rizza, either negligently or intentionally, inflicted "severe mental distress" upon the plaintiffs.

■ To state a cause of action for intentional infliction of emotional distress a plaintiff must allege facts to establish: (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that defendant's conduct was such that defendant knew that severe emotional distress would be certain or substantially certain to result. (*Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85.) With respect to the first element, the nature of defendant's conduct, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." (Restatement (Second) of Torts §46, comment *d* (1965).) As to the second element, the severity of the distress suffered by the plaintiff, "[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity." (Restatement (Second) of Torts §46, comment *j* (1965); see also W. Prosser §12, at 54 (4th ed. 1971).) Although fright, horror, grief, shame, humiliation, *worry*, etc. may fall within the ambit of the term "emotional distress," these mental conditions alone are not actionable. (*Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 90.) Finally, as to the recklessness of defendant's conduct, liability extends to situations in which there is a high degree of probability that severe emotional distress will follow and the actor goes ahead in conscious disregard of it. Restatement (Sec-

ond) of Torts §46, comment *i* (1965); W. Prosser, Torts §12, at 60 (4th ed. 1971).

■■ In the instant case we do not consider that the alleged conduct of the defendant, Rizza, was of such an extreme and outrageous nature as to constitute a basis for recovery for "severe mental distress." Therefore we conclude that the trial court erred in awarding damages for pain and suffering and this award is reversed.

■■ Lastly, Rizza maintains the trial court erred in awarding $14,400 attorney fees to the Kleidons under the provisions of the Consumer Fraud and Deceptive Business Practices Act. Rizza argues that in enacting the Consumer Fraud and Deceptive Business Practices Act the legislature intended the Act to provide only for discretionary fees and that the trial court never considered whether it had the discretion not to award attorney fees but instead made it clear that it viewed the Act as requiring an award of attorney fees to a prevailing consumer in every case under the Act.

Section 10a(c) of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 270a(c)) provides that the court may award attorney fees to the prevailing party. Words used in a statute are to be construed in accordance with their ordinary meaning, and the word "may" is usually employed as implying permissive or discretional as opposed to mandatory action or conduct. It thus appears that the determination of whether attorney fees should be awarded in an action brought under the Act rests in the sound discretion of the trial court. (*Tague v. Molitor Motor Co.* (1985), 139 Ill. App. 3d 313, 487 N.E.2d 436.) In the instant case the trial court chose in its discretion to award attorneys fees. Therefore we must next decide whether the trial court abused its discretion.

■■■ Rizza maintains that the amount of the trial court's fee award was unreasonable. In a similar case *Warren v. LeMay* (1986), 142 Ill. App. 3d 550, 491 N.E.2d 464, the plaintiffs on cross-appeal asserted that the amount of attorney fees and costs awarded to them by the trial court were inadequate. The plaintiffs requested this court to reverse the trial court's award and enter judgment for the full amount of fees and costs plaintiffs sought. This court refused, stating that the determination as to what constitutes reasonable attorney fees rests within the sound discretion of the trial court, and since the parties could not cite any authority specifically concerning the amount of attorney fees and costs compensable at trial under the Consumer Fraud and Deceptive Business Practices Act, such standard was appropriate for assessing the amount of attorney fees and costs awarded under the Act.

This court held that in light of the fact that in ruling on the plaintiffs' claim for fees and costs, the trial court expressly considered the *time and labor required, the novelty and difficulty of the questions involved, the experience and ability of the plaintiffs' counsel, the skill necessary to perform the legal services rendered, the customary fees charged for such services,* and *the benefits resulting to the plaintiffs,* it could not say that the total fees and costs awarded were so inadequate as to amount to a clear abuse of discretion by the trial court.

Similarly, Rizza argues that the trial court's award of a $90-per-hour rate of compensation and of a multiplier was unreasonable. We agree.

In support of his motion for an award of attorney fees, plaintiffs' attorney simply presented to the trial court his office and courtroom log of his hourly services. Plaintiffs' attorney, however, did not present any evidence of the reasonableness or of the value of his services. In awarding the attorney fees, the factors considered by the trial court were "who is the prevailing party, the reasonableness of the time spent, the hourly rate, and the question of whether and to what extent a multiplyer [*sic*] will be allowed." In reviewing the log of plaintiffs' attorney's services and in considering the time and labor, and the fees charged for such services the trial court stated:

"[F]rankly I regard the records as not sufficient.

\* \* \*

\*\*\* Plaintiff's Exhibit A while in some context certainly does not, is not satisfactory, it was one with hope. I think that the fact that it is not satisfactory, and that the actual amount of time is not indicated on all or even most of the sheet is of little consequence; because as I look at the time schedules that were submitted, I find them reasonable in consideration of the amount of time that this trial took.

\* \* \*

The next thing to consider is what is a reasonable hourly rate. The Court is going to find that $90 per hour is a reasonable hourly rate for this particular piece of litigation taken on at the time it was taken."

■■ Since consideration was not given to the novelty and difficulty of the questions involved, the experience and ability of plaintiff's counsel, the skill necessary to perform the legal services rendered and the benefits resulting to the plaintiffs, the judgment of the trial court was without a proper basis. We therefore reverse the attorney fees awarded and remand this case so that the reasonable

value of plaintiffs' attorney's services may be determined in a manner consistent with the foregoing.

Reversed and remanded with directions.

LORENZ, P.J., and SULLIVAN, J., concur.