**In re DIAMOND MORTGAGE CORPORATION OF ILLINOIS, an Illinois corporation, d/b/a Diamond Financial Services, Inc., I.D. # 36–3144958, Debtor.**

**John ARAMOWICZ, et al., Plaintiffs,**

**v.**

**Lloyd BRIDGES, et al., Defendant.**

**Bankruptcy No. 86 B 13066.
Adv. No. 87 A 76.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

July 12, 1989.

See also, Bkrtcy., 118 B.R. 575, and 118 B.R. 588.

Jerome S. Lamet, Stephanie W. Kanwit, Margaret F. Woulfe, Lamet, Kanwit & Associates, Chicago, Ill., for plaintiffs.

Ronald L. Futterman, Phyllis L. Crocker, Hartunian, Futterman & Howard Chtd., Chicago, Ill., for Yaffe.

Daniel R. Formeller, Jacqueline A. Criswell, Tressler, Soderstrom, Maloney & Priess, Chicago, Ill., for Bridges.

Lowell E. Sachnoff, Sara R. Wolff, Stuart J. Chanen, Sachnoff, Weaver & Rubenstein Ltd., Chicago, Ill., for Hamilton.

## AMENDED

## MEMORANDUM, OPINION AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter comes before the Court on defendant Yaffe & Company's ("Yaffe") motion for summary judgment. The Court has jurisdiction over the proceeding pursuant to 28 U.S.C. § 1334 and Local Rule 2.33 of the United States District Court of Illinois referring bankruptcy cases and proceedings to this Court. This is a noncore proceeding under 28 U.S.C. § 157(c)(1). The following constitutes the Court's recommended findings of fact and conclusions of law. For the reasons contained herein, Yaffe's motion is denied.

### FACTS

The Court is all too familiar with the facts of this case. Diamond Mortgage Corporation of Illinois, ("Diamond"), was an Illinois corporation and licenced mortgage broker. Diamond was in the business of loaning money to consumer homeowners and primarily lent money to high risk consumer borrowers. All of Diamond's loans were secured by a first mortgage on the borrowers' homes. Diamond attracted borrowers through general advertisements, several which featured actor George Hamilton.

Diamond, however, had no independent source of capital. The money Diamond used for its mortgage loans came from an affiliated corporation, A.J. Obie and Associates, Inc. ("Obie"), an Illinois corporation. Obie, in turn, raised the money that it advanced to Diamond through an aggressive television advertising campaign which included commercials featuring actor Lloyd Bridges. Many of the Diamond and Obie commercials, including those featuring Bridges and Hamilton, were produced by the advertising agency of Molner & Company ("Molner"). Yaffe was subsequently retained by Diamond and Obie as advertising agency and arranged for the broadcast of the Molner commercials, including those commercials featuring Bridges and Hamilton, and created and produced additional commercials for Diamond and Obie.

The theory behind the structure of the Obie transactions was that each investment was to be matched with one or more specific Diamond mortgages. From the investor's view point what was to happen was an investor would give his/her money to Obie which in turn would lend the investor's money to Diamond. Diamond would lend the funds to the borrower who would sign a note agreeing to repay the funds plus interest. The borrower would also give Diamond a mortgage interest in the borrower's home as security for the note. Diamond would transfer the note and mortgage to Obie. Obie would then assign this mortgage to the investor. When an investor was matched to one or more mortgages representing the amount of the investment, the investor became the mortgagee to Diamond's borrower. Diamond was to continue to service the mortgage for the investor for a fee based on a percentage of the borrower's payments. The notes carried a high interest rate, usually 15% or more, which in theory enabled the investor to get a generous return on his/her investment even after Diamond's service fees was taken out of the monthly mortgage payment.

This was the theory. Unfortunately, the theory was not generally applied in practice. The money invested in Obie usually did not go toward funding Diamond mortgages. As the plaintiffs allege, most of the investors were never matched to mortgages. Rather, in a classic Ponzi scheme fashion, apparently most of the investors' money went toward paying off other investors. In addition, allegations have been made that some of the money went to support the lavish lifestyles of certain members of the management of Diamond and Obie.

Not surprisingly, the house of cards came tumbling down in the summer of 1986. On August 25, 1986, Diamond and Obie filed voluntary Chapter 11 petitions. Subsequently, the plaintiffs, all Obie investors, sued the defendant Yaffe and several other parties, alleging a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat., ch. 121½, ¶ 261 *et seq.* (1987). Specifically, the plaintiffs allege that Yaffe

> actively participated in the Obie/Diamond advertising campaign by creating, producing, placing and/or distributing the Diamond and Obie advertisements which are the subject of this Complaint to the broadcast media.... Yaffe also consulted with Obie and Diamond regarding each of these services, developed a general marketing strategy for Obie/Diamond and designed and defined the theme and nature of the Obie/Diamond advertising campaign.

The plaintiffs further allege that Yaffe should have known that Obie investments were unsafe.

Yaffe brings this motion for summary judgment alleging that there are no material factual disputes and that it is entitled to judgment as a matter of law.

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c) Fed.R.Civ.P. *Celotex Corporation v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Howland v. Kilquist,* 833 F.2d 639, 642 (7th Cir.1987); *Cameron v. Frances Slocum Bank & Trust Co.,* 824 F.2d 570, 573 (7th Cir.1987); *Shlay v. Montgomery,* 802 F.2d 918, 920 (7th Cir.1986). The primary purpose for granting a motion for summary judgment is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Farries v. Stanadyne/Chicago Div.,* 832 F.2d 374, 379 (7th Cir.1987). On a summary judgment motion the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14. Moreover, the existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Howland,* 833 F.2d at 642.

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion by identifying those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. This is essentially a requirement that the moving party make a prima facie showing that it is entitled to summary judgment. 10A *Wright, Miller & Kane, Federal Practice & Procedure, Civil,* § 2727. Once this burden is met, the party opposing the motion may not rest upon mere allegations or denials, but its response must show that there is a genuine issue for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53; *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. However, if evidence opposing summary judgment is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

## DISCUSSION

■ Yaffe contends that the plaintiffs, in order to assert a claim under § 262 of the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat., ch. 121½ ¶ 261 *et seq.* (1987) ("ICFA"), must prove that: 1) Yaffe actively participated in the preparation of deceptive advertisements and knew or had reason to know that any advertisements were false; 2) the advertisements prepared by Yaffe contain actionable misrepresentations; and that 3) Yaffe was a proximate cause of the plaintiffs' alleged injuries. According to Yaffe, it is entitled to judgment as a matter of law because the plaintiffs cannot prove any of these elements and there are no material facts in issue.

The plaintiffs allege that there remain genuine issues of material fact in dispute. Principally, the plaintiffs assert that it is a question of fact whether Yaffe should have known that some of the statements made in the Obie commercials were not true. The plaintiffs claim that Yaffe should have known that some of the commercials in which it was involved on behalf of Diamond and Obie contained statements which were not true and that the Obie commercials in which Yaffe was involved, including the Bridges commercials known as "Fair Weather" and "Foul Weather" contain actionable misrepresentations.[1]

The starting point of the Court's analysis is § 262 of the ICFA which provides:

§ 2. Unfair methods of competition and unfair deceptive acts or practices including but not limited to the use or employment of any deception, fraud, false pretenses, false promise, misrepresentation or the concealment, suppression or omission of any material fact with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

Ill.Rev.Stat., ch. 121½, ¶ 262 (1987).

To establish a violation of the ICFA, a plaintiff must show a misrepresentation, concealment or omission of a material fact with the intent that others rely on that fact. *Kleidon v. Rizza Chevrolet, Inc.*, 173 Ill.App.3d 116, 122 Ill.Dec. 876, 527 N.E.2d 374 (1988). In order to be considered material, the concealed fact must have been such that had the other party known of it, he would have acted in a different manner. *Id.* 122 Ill.Dec. at 878, 527 N.E.2d at 376.

The Act provides broader consumer protection than the common law action of fraud since the Act also prohibits any "deception or false promise." *Perlman v. Time, Inc.*, 64 Ill.App.3d 190, 198, 20 Ill. Dec. 831, 838, 380 N.E.2d 1040, 1047 (1978). Illinois courts have followed the legislative mandate that the courts apply the Act to the utmost degree in eradicating all forms of deceptive and unfair business practices and grant appropriate remedies to injured parties. *Duhl v. Nash Realty, Inc.*, 102 Ill.App.3d 483, 57 Ill.Dec. 904, 914, 429 N.E.2d 1267, 1277 (1981). It is well established under the Act that the seller's intent is not important and a plaintiff may recover under the Act for innocent misrepresentations. *Id.*

---

**1.** Bridges' advertisements for Obie included the following statements:

If you're an investor you can't always expect smooth sailing. Security values and yields can change with the weather. But A.J. Obie & Associates offer secure investments that give you the same high yield in fair weather or foul and you get this high yield by check in the mail each month for as long as you own them. Well, you'll want to know more about this rewarding investment opportunity. If you'll listen, A.J. Obie has something to say.

Conditions aren't always certain. Sometimes an investor has to chart a new course. But, some investments maintain a high yield in spite of storms in the securities market place. A.J. Obie and Associates offer securities that earn a high yield from the first day of their purchase and you get this yield by check in the mail each month for as long as you own them. Want to know more? Well, if you'll listen, A.J. Obie has something important to say.

Yaffe's initial argument is that the plaintiffs did not rely on any commercials which it prepared or arranged for broadcast and that it was not an active participant in creating the advertisements on which the plaintiffs allegedly relied. Yaffe states that December 17, 1984 was the final broadcast date of an Obie commercial in which Bridges appeared, and that with the possible exception of Mr. and Mrs. Aramowicz, all of the remaining plaintiffs allege that they saw Obie commercials which featured Bridges on dates when no Bridges commercials were broadcast.

Yaffe contends that it did not participate in the development of any aspect of the advertising messages contained in the Bridges commercials—it did not write, edit, film or participate in the development of advertising strategies or the determination of the final format of the Obie commercials featuring Bridges. Yaffe maintains that it was hired by Diamond and Obie as their advertising agency *after* their previous agency had already produced the Bridges commercials upon which the plaintiffs allegedly relied and that its only connection with the Bridges commercials was to arrange for the Chicago broadcast of two of the commercials in 1984.

As this Court previously noted in its decision of July 25, 1988, the actual date that each plaintiff saw the advertisements is important in determining whether there was actual reliance. Yaffe has apparently interpreted this statement to mean that the dates on which the commercials were broadcast and the dates on which the plaintiffs claim to have seen the specific commercials must match in order to establish reliance. What matters is not the exactness of the dates recalled by the plaintiffs so long as it appears that the plaintiffs viewed the Bridges commercials prior to the time that they invested with Obie and that those dates are within the period that Yaffe served as advertising agency to Diamond and Obie. Without exception, each plaintiff recalls viewing the Obie commercials prior to making his/her decision to invest. The question is whether those commercials were relied on in making the investment decisions and whether Yaffe was responsible for putting false commercials on the air.

The ICFA provides that in construing § 262 courts should consider interpretations of the Federal Trade Commission and the federal courts relating to § 5(a) of the Federal Trade Commission Act. Ill.Rev. Stat., ch. 121½ ¶ 262 (1987).[2] The essence of the plaintiffs' complaint against Yaffe is that it allegedly violated the FTC's Guides Concerning Use of Endorsements and Testimonials in Advertising ("Guides"). *See* 16 CFR § 255.0 *et seq.* The plaintiffs contend that since Yaffe was employed by Diamond and Obie as an advertising agency, it should have known that the advertisements were false.

Yaffe seeks to make much of the fact that the commercials featuring Bridges were written and produced by Molner and Co., Yaffe's predecessor as Obie's advertising agency. Yaffe's sole role in the process was to arrange for airing those commercials in the Chicago market from April to October 1984. Yaffe relies heavily on language of the 9th Circuit in *Standard Oil of California v. F.T.C.*, 577 F.2d 653, 659 (9th Cir.1978), to argue that unless it made the commercials or had reason to know they were false or deceptive, it has no liability for airing them. The fact is that *Standard Oil* has nothing to do with this case, because its facts are so different from those now before this court.

■ The facts of this case are unique. This court has found no case where one agency made an allegedly false or misleading commercial and another was responsible for airing it. Therefore, there is no direct precedent on which the Court can rely. However, logic dictates that neither the producer of the commercial nor the agency responsible for airing it should be able to escape liability by blaming the oth-

**2.** The ICFA is patterned after § 5(a) of the Federal Trade Commission Act, which declares unlawful "unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce." 15 U.S.C. § 45(a) (1973). The ICFA, however, unlike the Federal Trade Commission Act, authorizes a private cause of action for deceptive commercial conduct. *See Crowder v. Bob Oberling Enterprises,* 148 Ill.App.3d 313, 101 Ill.Dec. 748, 499 N.E.2d 115 (1986).

er. The fact that these plaintiffs did not sue Molner is irrelevant. When Yaffe chose to put Molner's product on the air, it in effect adopted it as its own. It was the airing of those commercials that arguably led to these plaintiffs' losses. It follows that if Yaffe was going to air Molner's product, it acquired Molner's duty to ascertain that they were accurate. Molner may have written the Bridges ads, but if Yaffe hadn't put them on the air, this lawsuit would not now be pending.

The balance of Yaffe's arguments are similar to those raised by Bridges and have been dealt with in this court's denial of Bridges' summary judgment motion. While Yaffe clearly made some inquiry, the adequacy of that inquiry is a question of material fact to be reached at trial as are issues of reliance and proximate cause. Yaffe's motion for summary judgment is denied.

## CONCLUSION

The Court finds that there remain genuine issues of material fact in dispute. Accordingly, the court will deny Yaffe's motion for summary judgment.

IT IS HEREBY ORDERED that defendant Yaffe & Company's Motion for summary Judgment is denied.