In re DIAMOND MORTGAGE CORPO-RATION OF ILLINOIS, an Illinois corporation, d/b/a Diamond Financial Services, Inc., I.D. # 36–3144958, Debtor.

John ARAMOWICZ, et al., Plaintiffs,

v.

Lloyd BRIDGES, et al., Defendants.

Bankruptcy No. 86 B 13066.
Adv. No. 87 A 76.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Sept. 15, 1989.

Jerome S. Lamet, Stephanie W. Kanwit, Margaret F. Woulfe, Lamet, Kanwit & Associates, Chicago, Ill., for plaintiffs.

Ronald L. Futterman, Phyllis L. Crocker, Hartunian, Futterman & Howard Chtd., Chicago, Ill., for Yaffe.

Daniel R. Formeller, Jacqueline A. Criswell, Tressler, Soderstrom, Maloney & Priess, Chicago, Ill., for Bridges.

Lowell E. Sachnoff, Sara R. Wolff, Stuart J. Chanen, Sachnoff, Weaver & Rubenstein Ltd., Chicago, Ill., for Hamilton.

## AMENDED MEMORANDUM, OPINION AND ORDER

ROBERT E. GINSBERG, Bankruptcy Judge.

This matter comes to be heard on defendant George Hamilton's, ("Hamilton"), motion for summary judgment. The Court has jurisdiction over the proceeding pursuant to 28 U.S.C. § 1334 and Local Rule 2.33 of the United States District Court of Illinois referring bankruptcy cases and proceedings to this Court. This is a noncore proceeding under 28 U.S.C. § 157(c)(1). The following constitutes the Court's findings of fact and conclusions of law. For the reasons contained herein, Hamilton's motion is denied.

### FACTS

The Court is all too familiar with the facts of this case. Diamond Mortgage Corporation of Illinois, ("Diamond"), was an Illinois corporation and licensed mortgage broker. Diamond was in the business of loaning money to consumer homeowners. Diamond generally lent money to high risk consumer borrowers. All of Diamond's loans were secured by a first mortgage on the borrowers' homes. Diamond attracted borrowers through widespread advertising. A number of Diamond's television advertisements featured George Hamilton, a well known television and movie actor.

Diamond, however, had no independent source of capital. The money Diamond used for its mortgage loans came from an affiliated corporation, A.J. Obie and Associates, Inc., ("Obie"), an Illinois corporation. Obie raised the money that it advanced to Diamond from public investors through an aggressive advertising campaign.

The theory behind the structure of the Obie investments as marketed to the public was that each investment was to be matched with one or more specific Diamond mortgages. From the investor's viewpoint, what was to happen was an investor would

give his/her money to Obie which in turn would lend the investor's money to Diamond. Diamond would lend the funds to the borrower who would sign a note agreeing to repay the funds plus interest at a rate well above prime. The borrower would also give Diamond a mortgage interest in the borrower's home as security for the note. Diamond would transfer the note and mortgage to Obie. Obie would then assign this mortgage to the investor. When an investor was matched to one or more mortgages representing the amount of the investment, the investor in effect became the mortgagee to Diamond's borrower. Thus, the risk of the investment was reduced because it was backed by a lien on the Diamond borrower's home. Diamond was to continue to service the mortgage for the investor for fee based on a percentage of the borrower's payments. The notes carried a high interest rate, usually 15% or more, which in theory enabled the investor to get a generous return on his/her investment even after Diamond's servicing fee was taken out of the monthly mortgage payment.

That was the theory. Unfortunately, the theory was not generally applied in practice. The money invested in Obie often did not go toward funding Diamond mortgages, and most of the investors were never matched to mortgages. Rather, in a classic Ponzi scheme fashion, apparently much of the investors' money went toward paying off other investors. In addition, another large chunk of the money went to support the lavish lifestyles of certain members of the management of Diamond and Obie. In its short, unhappy life, Obie raised more than $40,000,000 from an unsuspecting investing public. Many of those investors were elderly people who sank a large portion of their life savings into Obie.

Not surprisingly, the fraud was discovered and the house of cards came tumbling down in the summer of 1986. On August 25, 1986 Diamond and Obie filed voluntary Chapter 11 petitions. Several of the Diamond/Obie principals were indicted, convicted and went to jail. However, it soon became apparent that huge sums had been siphoned off and apparently lost. Little chance exists for recovery from the debtors' principals. The shortfall between the amount of mortgage loans made by Diamond and the amount of money Obie raised from investors was in the tens of millions of dollars. It quickly became apparent that the investors, particularly those who had not been matched to a mortgage, were looking at huge loses on their investment.[1] Thus, some investors began to look around for solvent people or entities who could be blamed for the losses they had suffered. These plaintiffs, all Obie investors, sued the defendant Hamilton, Lloyd Bridges (the actor of Sea Hunt fame who served as Obie's primary television speaker) and one of Diamond/Obie's advertising agencies, alleging violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat., ch. 121½, ¶ 261 *et seq.* (1987).

Hamilton has brought the instant motion for summary judgment claiming that there are no material factual disputes and that he is entitled to judgment as a matter of law. For reasons stated herein, that motion is denied.

## STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c) Fed.R.Civ.P. *Celotex Corporation v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Howland v. Kilquist,* 833 F.2d 639, 642 (7th Cir.1987); *Cameron v. Frances Slocum Bank & Trust Co.,* 824 F.2d 570, 573

---

1. In fact, under the liquidation plan confirmed by this court, the unmatched investors will be lucky to get back 40 Cents on the dollar.

(7th Cir.1987); *Shlay v. Montgomery,* 802 F.2d 918, 920 (7th Cir.1986). The primary purpose for granting a motion for summary judgment is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Farries v. Stanadyne/Chicago Div.,* 832 F.2d 374, 379 (7th Cir.1987). On a summary judgment motion, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. Moreover, the existence of a material factual dispute is sufficient only if the disputed fact is determinative of the outcome under applicable law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Howland,* 833 F.2d at 642.

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion by identifying those portions of the "pleadings, depositions, answers to interrogatories, and affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. This is essentially a requirement that the moving party on a motion for summary judgment make a prima facie showing that it is entitled to summary judgment. 10A *Wright, Miller & Kane, Federal Practice & Procedure, Civil,* § 2727. Once the motion is supported by a prima facie showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the mere allegations or denials in its pleadings. Rather, its response must show that there is a genuine issue for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. However, if evidence opposing summary judgment is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

## DISCUSSION

Hamilton contends, without citing any authority, that the plaintiffs, in order to assert a claim under § 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat., ch. 121½, ¶ 261 *et seq.* (1987) ("ICFA"), must prove that Hamilton: 1) was an endorser of Obie securities; 2) was an expert endorser of Obie securities; 3) derived a direct financial benefit from the sale of Obie securities; 4) made actionable false statements in the Diamond advertisements in which he appeared 5) actively participated in the preparation of the Diamond ads and knew or should have known those ads contained false statements; 6) intended for Obie investors to rely on his statements in the Diamond ads; 7) that plaintiffs in fact relied on Hamilton's statements in the Diamond ads in deciding to invest in Obie; and 8) that the statements made by Hamilton in the Diamond ads were the proximate cause of plaintiff's alleged injuries. According to Hamilton, because the plaintiffs cannot prove any or all of these elements and there are no material facts in issue, he is entitled to judgment as a matter of law.

The plaintiffs respond that Hamilton has mischaracterized the necessary elements that plaintiffs must prove in order to establish a claim under the ICFA. Moreover, the plaintiffs allege that there remain genuine issues of material fact in dispute with respect to those requirements that do exist for establishing a claim under the IFCA. The plaintiffs assert that a question of fact exists as to whether Hamilton knew or should have known that some of the statements he made in the Diamond commercials were not true. In this regard they focus primarily on the business and personal relationships between Hamilton and the debtors' principals, the Greenbergs. The plaintiffs point out that Hamilton became involved in a limited partnership investment with the Greenbergs. During the course of that investment, Hamilton learned that the contributions made by the Greenbergs to the partnership came from Diamond rather than from the Greenbergs personally, although the partnership had nothing to do with Diamond. In addition, according to the plaintiffs, in 1983, the Greenbergs informed Hamilton that they and Diamond had suffered serious financial losses, and they were encountering severe

financial difficulties.[2] Nevertheless, at the same time the plaintiffs claim he knew of those warning flags, Hamilton was telling people in television commercials that Diamond was the "Midwest's number one mortgage broker" and that it lent "hundreds of millions of dollars". The plaintiffs claim that these assertions were untrue, that Hamilton knew or should have known that they were untrue and that his false advertisements for Diamond were a proximate cause of the loss of their Obie investments.

The starting point of the Court's analysis is § 2 of the ICFA which provides:

> § 2. Unfair methods of competition and unfair deceptive acts or practices including but not limited to the use or employment of any deception, fraud, false pretenses, false promise, misrepresentation or the concealment, suppression or omission of any material fact with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

Ill.Rev.Stat., ch. 121½, ¶ 262 (1987).

To establish a violation of the ICFA, a plaintiff must show a misrepresentation, concealment or omission, of a material fact with the intent that others rely on that fact. *Kleidon v. Rizza Chevrolet, Inc.,* 173 Ill.App.3d 116, 122 Ill.Dec. 876, 527 N.E.2d 374 (1988). In order to be considered material, the concealed fact must have been such that had the other party known of it, he would have acted in a different manner. *Id* 122 Ill.Dec. at 878, 527 N.E.2d at 376.

The "ICFA" affords broader consumer protection than does the common law action of fraud since the Act also prohibits any "deception or false promise". *Perlman v. Time, Inc.,* 64 Ill.App.3d 190, 198, 20 Ill.Dec. 831, 838, 380 N.E.2d 1040, 1047 (1978). Thus, the case of *Kramer v. Unitas,* 831 F.2d 994 (11th Cir.1987), upon which Hamilton urges this court to give weight really is inapplicable. *Kramer,* unlike the case at bar, was based on a common law fraud action. Illinois courts have recognized the legislative mandate that courts utilize the ICFA to the utmost degree in eradicating all forms of deceptive and unfair business practices and grant appropriate remedies to injured parties. *Duhl v. Nash Realty, Inc.,* 102 Ill.App.3d 483, 57 Ill.Dec. 904, 914, 429 N.E.2d 1267, 1277 (1981). To that end, it is well established under the Act that the seller's intent is not important and under certain circumstances, a plaintiff may recover under the Act for negligent misrepresentations. *Id.*

The ICFA provides that in construing § 262 courts should consider interpretations of the Federal Trade Commission and the federal courts relating to § 5(a) of the Federal Trade Commission Act. Ill.Rev. Stat., ch. 121½, ¶ 262 (1987).[3] The essence of the plaintiffs' complaint against Hamilton is that Hamilton allegedly violated the FTC's Guides Concerning Use of Endorsements and Testimonials in Advertising ("Guides"). *See* 16 CFR § 255.0. *et seq.*

Under those Guides, the first question is whether Hamilton was a spokesperson or endorser. The plaintiffs contend that Hamilton was an endorser of Diamond and that under the provisions of the FTC

---

**2.** Hamilton knew or should have known that something clearly was wrong with Diamond, that money that should have been being used to fund more mortgages was being diverted to the Greenbergs' personal use and that the Greenbergs and Diamond were in deep financial trouble. The plaintiffs also point out that by 1985 at least, Hamilton knew that Diamond was in financial trouble because it was having problems meeting its obligations under its 1981 contract with Hamilton.

**3.** The ICFA is patterned after § 5(a) of the Federal Trade Commission Act, which declares unlawful "unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce." 15 U.S.C. § 45(a) (1973). The ICFA, however, unlike the Federal Trade Commission Act, authorizes a private cause of action for deceptive commercial conduct. *See, Crowder v. Bob Oberling Enterprises,* 148 Ill.App.3d 313, 101 Ill.Dec. 748, 499 N.E.2d 115 (1986).

Guides, he had an affirmative duty to substantiate the truthfulness of the endorsements and obtain independent and reliable information regarding the financial stability of Obie and Diamond—a duty which, according to the plaintiffs, Hamilton failed to carry out. Hamilton, on the other hand, takes the position that he was not an endorser of either Diamond or Obie, but rather merely a spokesperson on behalf of Diamond. Hamilton asserts that in fact the commercials reflect only the views of Diamond and not Hamilton's own personal views. Hamilton also argues that even if this Court finds he was an endorser of Diamond, the plaintiffs must prove that statements contained in the Diamond advertisements were also endorsements of Obie investments.

In order to determine whether Hamilton was an endorser, the Court must look to the FTC's Guides. The Guides provide that:

> For purposes of this part, an "endorsement" means any advertising message (including verbal statements, demonstrations, or depictions of the name, signature, likeness or other identifying personal characteristics of an individual or the name or seal of an organization) which message consumers are likely to believe reflects the opinions, beliefs, findings, or experience of a party other than the sponsoring advertiser. The party whose opinions, beliefs, findings, or experience the message appears to reflect will be called the endorser and may be an individual, group or institution. (emphasis added)

16 C.F.R. § 255.0(b).

Hamilton's advertisements for Diamond included the following statements:

"Hundreds of millions of dollars. That's how much Diamond has arranged in new first mortgages during the many years I've been talking to Midwest homeowners."

"For many years now, I've been telling homeowners how Diamond can help them to a better life."

"Do call the Midwest's number one mortgage broker, because Diamond wants to be your friend."

Whether the commercials did, in fact, reflect Hamilton's views or Diamond's views is irrelevant. The crucial question is whether a reasonable consumer would regard those commercials as expressing Diamond's views or those of Hamilton. *Ramson v. Layne*, 668 F.Supp. 1162 (N.D.Ill. 1987). Clearly, Hamilton's message could be viewed by a reasonable consumer as an endorsement of Diamond by Hamilton. The advertisements had the capacity to lead reasonable consumers to believe that the statements reflected Hamilton's "opinions, beliefs, findings or experience" concerning Diamond mortgages. Hamilton did more than merely introduce Diamond or just invite the public to call Diamond for more information. *Compare Kramer v. Unitas*, 831 F.2d 994 (11th Cir.1987).[4] The fact that Hamilton did not state that he was expressing his personal opinion does not preclude a finding that consumers were likely to have believed he was doing so. *Ramson v. Layne*, 668 F.Supp. 1162, (N.D. Ill.1987). The test is what "consumers are likely to believe". *Id.* Hamilton did not say these were not his views. Instead he said in effect: "I've been saying this for years. Rely on me. Diamond is OK."

■ Hamilton goes on to argue that even if he is deemed an endorser of Dia-

---

**4.** The Unitas in *Kramer* was Johnny Unitas, the great quarterback for the late lamented Baltimore Colts. In *Kramer*, the court found that Unitas said nothing that constituted a "representation." However, the holding of that case has little application to the instant case as the facts differ significantly. Unitas performed as a spokesman in radio spots for a mortgage/investment broker. In the commercials, Unitas identified himself as a famous football player and introduced his "friends at First Fidelity." After a representative of First Fidelity announced that "you can earn up to 18.33% annual yield," that the company meets "all prudent man requirements," Unitas reappeared and closed by inviting the public to call First Fidelity for additional information. *Kramer v. Unitas*, 831 F.2d 994, 995–96 (11th Cir.1987). Both the district court and the 11th Circuit found that although Unitas' voice may have initially caught the plaintiffs' attention, nothing he said or did constituted a "representation" which would support the plaintiffs' fraud claims, but merely invited further inquiries. *Id.*, at 998–99.

mond mortgages and Obie investments, the plaintiffs must establish that he was in fact an expert in each of those fields. Hamilton contends that he is hardly an expert in financial matters, so plaintiff's case must fail on this ground. In support of that proposition Hamilton cites three FTC consent decrees.[5] These three decrees, according to Hamilton, set the standard of endorser liability. As Hamilton sees it, since all three FTC decrees involved experts, it follows that only an expert be an endorser.

The simple answer is that there is no requirement of expertise for something to qualify as an endorsement under the ICFA. The Guides define an expert as "an individual, group, or institution possessing, as a result of experience, study or training, knowledge of a particular subject, which knowledge is superior to that generally acquired by ordinary individuals", 16 C.F.R. § 255.0(d). However, nowhere in the Guides does it state that in order for an endorser to be liable, he/she must be an "expert endorser". Rather, § 255.1 speaks in general terms as to the responsibility of an endorser. § 255.1 provides in pertinent part that:

> Endorsements must always reflect the honest opinions, findings, beliefs, or experience of the endorser. Furthermore, they may not contain any representations which would be deceptive or could not be substantiated if made directly by the advertiser.

16 C.F.R. § 255.1(a).

It is evident that § 255.1 does not differentiate between the liability of an non-expert "endorser" and an "expert endorser". It does not use the work "expert" at all. This court will not read words and requirements into § 255.1(a) that are not there.

It is true that three FTC rulings relied on by Hamilton all do involve expert endorsers. However, the fact that all three were experts was accidental and irrelevant to the outcome. Hamilton has cited no ruling or decision which relieves an endorser of lia-

bility on account of lack of expertise. In addition, it is of significance that the regulations, which postdate the consent decrees, contain no express or implied requirement of endorser expertise. In fact, the examples are to the contrary. *See, e.g.,* 16 C.F.R. § 255.5 Example 2.

A requirement of endorser expertise is also illogical. Hamilton, as an endorser of Diamond had a duty not to make any representations which would be deceptive regardless of his expertise or lack thereof. Hamilton cannot offer his opinions about Diamond with a view towards inducing others to rely on his credibility by responding positively to his advertisements and then, when the statements in the advertisements prove to be false and misleading, say he is not liable because he was not qualified to make the statements he made.

Hamilton's next contention is that in order to assert a claim under the ICFA and the FTCA, the plaintiffs must prove that Hamilton derived a direct financial benefit from his alleged misrepresentations and omissions. Hamilton claims that the FTC consent decrees suggest that for an endorser to be liable under the FTCA or the ICFA, he or she must have a direct financial interest related to the actual sale of the product.

Once again, Hamilton is making up a nonexistent requirement under the ICFA. In *Ramson v. Layne, supra,* Judge Shadur was presented with the same argument regarding actor Lloyd Bridges' claim that he did not have a financial interest in his advertisements for Obie. Bridges, like Hamilton, relied on the language of the FTC consent decrees as the basis for this test. Judge Shadur, however, found that the language in those cases "did not purport to state such an interest as a condition of 'endorser' status—[financial interest is important] merely as a relevant matter for disclosure." 668 F.Supp. 1168 n. 14. Moreover, Judge Shadur noted that the FTC no longer considers it relevant, even for disclosure purposes, that an endorser

5. *Glass,* 95 F.T.C. 246 (1980); *Cooga Mooga, Inc.,* 92 F.T.C. 310 (1978), modified 98 F.T.C. 814 (1981); and *Cooper,* 94 F.T.C. 674 (1979).

has a financial interest in the sale of a product. 668 F.Supp. 1169. This Court finds Judge Shadur's reasoning persuasive.[6]

Hamilton next questions whether any of the statements in the Hamilton–Diamond commercials were false or misleading. The plaintiffs' claim that Hamilton's boast that Diamond was "the Midwest's number one mortgage broker" was false and misleading. This statement, according to the plaintiffs, went beyond "puffing." Hamilton, takes the position that the statement was "classic puffing," which is not actionable under the ICFA.

 The defense of "puffing," in essence is an argument that a defendant's representation is merely an "opinion" as opposed to a "fact." *Hageman v. Twin City Chrysler–Plymouth, Inc.,* 681 F.Supp. 303, 308–309 (M.D.N.C.1988). While a seller has some latitude in "puffing" the product being sold, the seller is not permitted to misrepresent the product or to assign to it benefits or virtues it does not possess. *Gulf Oil Corp. v. F.T.C.,* 150 F.2d 106, 109 (5th Cir.1945). It is well recognized that advertising which merely states that one product is superior, is not actionable. *Smith–Victor Corporation v. Sylvania Electric Products, Inc.,* 242 F.Supp. 302, 308 (N.D.Ill.1965). Whether a statement is puffing or claim of fact, is, however, a question of fact. *See People ex rel. Hartigan v. Maclean Hunter Publishing,* 119 Ill.App.3d 1049, 1058, 75 Ill.Dec. 486, 457 N.E.2d 480 (1983).

In this situation, the analysis of puffing versus claim of fact is complicated by plaintiffs' argument that in endorsing Diamond, Hamilton was really indirectly endorsing Obie's sale of securities to an unsuspecting investing public. What may be only puffing as to Diamond may be a good deal more as to Obie. Most borrowers don't worry greatly whether their lender is "Number 1." All borrowers want is the money. In general they do not care who

lends it to them beyond trying to find the lowest interest rate available. On the other hand, representations that Diamond was a solid, secure company would be of great importance to potential Obie investors. After all they were being asked to sink that money into Obie investments backed by Diamond mortgages. If Diamond was indeed "number one" (i.e. a solid mortgage broker), those Obie investments would be reasonably safe. However, if Diamond was not what it appeared to be—what Hamilton's advertisements made it appear to be—then the risk of the Obie investments increased markedly. Thus, what might be puffing to Diamond borrowers could easily become a material misrepresentation to an Obie investor. The fact is Diamond was not the secure entity Hamilton portrayed it to be in his commercials. Therefore, if Hamilton was selling Obie securities, he may well have misrepresented material facts.

But that leads to a quantum leap in this lawsuit. For all that appears, Hamilton was only soliciting borrowers for Diamond. Plaintiffs, however, claim that he was an essential tool in the fraudulent marketing of Obie investments. Obie investments were to be backed by Diamond mortgages. The plaintiffs claim that Hamilton's endorsement of Diamond was a significant element in convincing them that a Diamond/Obie investment was sound. Reaching this conclusion and imposing liability on Hamilton for his Diamond ads in favor of Obie investors requires several more links in the chain. First, the Obie investors must show that Hamilton knew or should have known that the Diamond commercials were false. Clearly there is evidence in the record that arguably could have put Hamilton on warning that something was wrong in the Diamond/Obie empire including the strange financing of the Pleasant View partnerships (with the Greenbergs' use of Diamond's money for their own and Hamilton's purposes) and Hamilton's own prob-

---

6. The record certainly supports the conclusion that the "trade or commerce" of Ill.Rev.Stat. ch. 12 121½, ¶ 261 § 1(f) requirement was satisfied with respect to both Diamond and Hamilton.

Diamond was in the loan business and paid Hamilton very generously to endorse its business.

**596**

lems in collecting from Diamond for his commercials.

The next thing the plaintiffs must prove is that Hamilton knew or should have known that those commercials could be used to sell Obie investments. Again, there is evidence in the record, which if established at trial, could support this conclusion, including the fact Hamilton knew that Bridges was working for the Greenbergs and again the fact that Hamilton knew or should have known that the Greenbergs were in financial trouble. The fact that Hamilton did not intend subjectively to sell Obie investments is irrelevant. The question is whether objectively he knew or should have known his commercials would be so used.

The final two questions, whether the commercials were so used (i.e., whether the plaintiffs in fact relied on Hamilton's Diamond commercials in making their Obie investments), and whether that evidence proximately caused their losses are the subject of a battle between the plaintiffs' affidavits filed with their response to the instant motion for summary judgment and their earlier deposition testimony. This is not a situation where the affidavits simply contradict the deposition. *Compare Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir.1985). Instead, here there are internal inconsistencies in the depositions as well as conflicts between the depositions and affidavits. The court believes these inconsistencies can best be resolved at trial where the court will have an opportunity to measure the credibility of the plaintiffs' testimony.

### CONCLUSION

The Court finds that there remain genuine issues of material fact in dispute. Accordingly, the Court will deny Hamilton's motion for summary judgment.

IT IS HEREBY ORDERED that defendant George Hamilton's Motion for Summary Judgment is denied.